LULA HARRIS, BY NEXT FRIEND, V. J. N. & W. M. PETTY.

(Case No. 2072.)

1. ASSIGNMENT OF ERRORS—PRACTICE—TRUSTEE—NATURAL AND APPOINTED GUARDIANS —DEED CONSTRUED—In 1868, a wife, joined by her husband, conveyed a tract of land, part of her separate property, to a trustee for the use.and benefit of their minor children. The deed provided that the trustee should have the power to sell the property at the request of the minors, made through their legal and natural guardians. No guardian was appointed, and in 1871 the trustee, at the request of the parents, sold the land. In a suit brought for the land by one of the minors, the trust deed and the request to the trustee to sell the land, were copied into the statement of facts as parts of the chain of title relied on by the defendants. *Held:*

(1) The powers with which the trustee was invested being matters of law and apparent from the record, the validity of the sale could be determined without an assignment of error.

(2) Under the law of March 20, 1848, no action of any court was necessary to constitute the father the guardian of the persons of his minor children, and of such portions of their estates as were given them by him. (Byrne *v.* Love, 14 Tex., 87.)

(3) Under the act of August 15, 1870, the father, if living, and the mother after his death, were entitled to the guardianship of the persons of their minor children, but were only entitled to be *appointed* guardians of their estates, although the estates may have been given by such parent.

(4) The grantors intended to empower the trustee to make sale of the land under certain restrictions, and the deed should be construed so as to give effect to that intention.

(5) Under the act of March 20, 1848, a guardian of the estate of a minor having a natural guardian, could be appointed only when the minor was entitled to an estate not derived from the natural guardian, and the natural guardian was incompetent, or was mismanaging or wasting the estate.

(6) At the time of the execution of the deed of trust, through which defendants claim, no guardians of the estates of the minors could have been appointed, and it should be presumed that by the words "legal guardians," as used in it, was meant guardians by operation of law.

(7) Viewing the trust deed in connection with the law, as it existed at the time of its execution, it must be concluded that the request of the father to the trustee, to sell the land, called into exercise his power to make a legal sale.

ERROR from Anderson.   Tried below before the Hon. F. A. Williams. The opinion states the case.

*Marsh Glenn*, for plaintiff in error, cited: Crosby *v.* Huston, 1 Tex., 225-6, and authorities cited; Byrne *v.* Love, 14 Tex., 81; Merriman *v.* Russell, 39 Tex., 285; Abb. Tr. Ev., 234; 3 Wait's Acts. and Def., 139, 140; Oldham & White Dig., Arts. 951-954, 975, 976; R. S., Arts. 2493, 2494, 2495, 2573-2590; Judson *v.* Sierra, 22 Tex., 365; Calloway *v.* Nichols, 47 Tex. 327; Wright *v.* Doherty, 50 Tex., 34; Pruitt *v.* Pruitt, decided by Sup. Ct. of Ind., December 11, 1883, and authorities cited.

*W. Q. & F. Reeves*, for defendants in error, cited: Jacobs *v.* McClintock, 53 Tex., 72; 1 Story on Eq., secs. 94-97, 170-174; 2 Wash. on R. P., 335, sec. 8.

GAINES, ASSOCIATE JUSTICE.—This suit is an action of trespass to try title brought by plaintiff in error, a minor, by her next friend, to recover of defendants in error the two tracts of land described in her petition.   There was no controversy about the evidence in the court below, and the facts, as briefly stated, are these: On July 4, 1868, the land in controversy was the separate property of A. E. Harris, the wife of W. R. Harris.   On that day Mrs. Harris, joined by her husband, conveyed the premises sued for to one W. T. Calwell, in trust, for the use and benefit of their minor children, Lula, the plaintiff in error, and one James C. Harris, who is not a party to this suit; and in the conveyance, among other provisions, made the following: "and further, the said Calwell shall have the power to sell said property, or any part thereof, at the request of said James C. Harris and Lula Harris, through their legal and natural guardians."

No guardian was ever appointed for these minors, and on September 7, 1871, W. R. Harris and A. E. Harris, as their parents and natural

guardians, made a request in writing upon the trustee Calwell, to sell the lands in controversy. On the 18th day of the same month Calwell, in compliance with such request, sold and conveyed the lands to defendants in error. In the court below the cause was tried by the judge without a jury, and judgment was rendered for defendants in error.

The cause is brought to this court by a writ of error, and no errors have been assigned; but counsel for plaintiff in error makes the point in his brief, that the request of the father and mother of the beneficiaries in the deed of trust is not sufficient of itself to authorize the trustee to sell the land, but that, in addition thereto, he should have had a request to make the sale from a guardian duly appointed by the proper court.

We are met upon the threshold of the case in this court, by the question, whether or not, we can consider the point so made in the absence of an assignment of errors. The rule of the supreme court in reference to this subject is as follows:

"23. Said record shall contain an assignment of errors as required by the statute." (Paschal's Dig., Art. 1591.) "If it does not, the court will not consider any error but one of law that may be apparent upon the record, if the judgment is one that could legally have been rendered in the district court and affirmed in the supreme court." Pas. Dig., Art. 1581.

This article last referred to in this rule is embodied in the Revised Statutes in the following words: "In all cases of appeal or writ of error to the supreme court, the trial shall be upon a statement of facts * * * or a bill of exceptions to the opinion of the judge, or on a special verdict, or an error of law either assigned or apparent on the face of the record," etc. R. S., Art. 1033.

The trust deed and the request to the trustee to sell the land, the sufficiency of which is called in question, are copied into the statement of facts as parts of the chain of title relied on by defendants in error. The question, therefore, is apparent upon the face of the record, and it is purely one of law; and we think it the duty of the court to determine it.

In construing the deed of Harris and wife to Calwell, as trustee, it is to be remarked, that it was executed in the year 1868, while the act of March 20, 1848, in relation to guardians was in force. The first section of this act provides in substance, that the father, if living, and the mother, if he be dead, shall be entitled to the guardianship of the persons and estates of their minor children, and that if such estates are given to such minor children by such parent, then the father

or mother shall not be required to give bond, take the oath and return an inventory as required of other guardians. Pas. Dig., Art. 3884.

Under this law no action of any court is required to constitute the father the guardian of the persons of his minor children and of such portion of their estates as may have been given them by him. This construction of the act is clearly recognized in the case of Byrne v. Love, 14 Tex., 87.

If the property in controversy had belonged, at the time of the conveyance, to the father, he would have been, by operation of the law just cited, the legal and natural guardian of the persons of these minors and of the property conveyed in the deed of trust, and the decision of the question would have been freed from difficulty. But the land was the property of his wife, and was given by her to their two children. It is further to be noted, that the conveyance from Calwell to defendants in error was not made until the year 1871, when the act of August 15, 1870, in relation to guardians was in force.

By the provisions of this act, the father, if living, and the mother after his death, were entitled to the guardianship of the persons of their minor children, but were only entitled to be appointed guardians of their estates, although the estates may have been given by such parent. Pas. Dig., Arts. 6898, 6900.

We think, therefore, at the time of the sale from Calwell to defendants, the father of the *cestuis qui trust*, could not be deemed the guardian of the property conveyed to Calwell in the trust deed. On the other hand, it is apparent from the deed that the grantors intended to empower the trustee to make sale of the land under certain restrictions; and we think this deed must be so construed as to give effect to that intention. If it should appear that no court had the power, at the time the deed of trust was executed, to appoint a guardian of the estate of these minors, then the effect of holding that the request of a duly appointed guardian of the estate was necessary in order to call into existence the power to make the sale, would be to defeat the intention of the donors, and to render the provision in the instrument for a sale of the property wholly inoperative.

The fifth section of the act of March 20, 1848, seems to restrict the power of the court to appoint a guardian of the estate of a minor who has a natural guardian. It is as follows:

"When a minor shall be entitled to, or possessed of, any estate not derived from the parent who shall be the natural guardian at the time, and it shall be shown to the chief justice of the county, that such parent is incompetent to take care of such estate, or is mismanaging, or wasting the same, such chief justice shall cause a citation to be issued

and served on such parent to appear before him at some regular term of the county court, and show cause why a guardian of the estate of such minor should not be appointed or chosen, and if * * * no sufficient cause be shown, such chief justice shall appoint a guardian of the estate of such minor," etc. Pas. Dig., Art. 3888. Sections two and three of the same statute provide for the appointment of guardians of minors, where they have no parent living, and no "natural or legal guardian," and in no manner conflicts with the section quoted. The record in this case no where discloses that these minors had any estate except the property conveyed to them by the trust deed. This property was placed by the terms of the deed in the hands of the trustee to be managed by him, until the *cestuis qui trust* should marry or arrive at the age of twenty-one years. Would the court appoint a a guardian of this estate which was already under control of a trustee? And, we may also ask, how could the county court appoint a guardian according to the provisions of section five of the act of 1848, which has been quoted above? The father could not mismanage or waste the property because he had no control of it, and it was certainly a matter of no moment whether he was competent to manage it or not, for the same reason.

Hence, we think at the time of the execution of the deed in trust, that no guardian of estates of the minors could have been appointed by the county court, and that it must be presumed therefore that by the words "legal guardians," as used in the deed, was not meant a guardian appointed by the court, but one who was made the guardian by the operation of the law itself. The father was the guardian of the minors by nature, and was made by the law the guardian at least of their persons; and in the event of his death, this trust devolved upon the mother if she survived. Viewing the trust deed in the light of the law as it existed when it was executed, we must conclude that the true intent and meaning of the grantors was to require only the request of the natural guardian or guardians of the minors to enable Calwell to make the sale of the property conveyed.

We therefore, think that the request of the father to Calwell as trustee, to sell the land, called into exercise his power to make the sale, and that his sale to defendants in error was legal, and his conveyance to them passed the title. There is no other question of law apparent upon the face of the record, and the judgment is therefore affirmed.

AFFIRMED.

[Opinion delivered October 15, 1886.]