FREEMAN v. BANK OF GARVIN et al.†

(Court of Civil Appeals of Texas. Texarkana. Feb. 1, 1912. On Motions of Appellees for a Rehearing, March 14, 1912.)

1. INDEMNITY (§ 7*)—CONTRACTS—CONSTRUCTION.

A corporation gave its note indorsed by S., a stockholder to a bank. Subsequently the corporation gave a note to F., a stockholder, secured by a mortgage on corporate property on the agreement that he would pay the note to the bank. The agreement was wholly between the stockholders, and contemplated that F. should pay out of the loan to him, or out of his own money, if necessary. *Held*, that the promise of F. to S. was a personal one, and not on behalf of the corporation, and it was a promise to indemnify S. against his liability as indorser within the rule that a contract of indemnity inures to the benefit of the indemnitee only, and the bank could not sue F. on the promise.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 8; Dec. Dig. § 7.*]

2. PLEADING (§ 104*)—PLEA IN ABATEMENT—PRIVILEGE—COUNTY OF RESIDENCE.

Where a defendant sued in a county in which he did not reside filed his plea of privilege to be sued in the county of his residence, and he was not liable to plaintiff, his plea of privilege was good in a cross-action by a codefendant, and the cross-action will be transferred to the county of the residence of defendant.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 213–217; Dec. Dig. § 104.*]

### On Motions of Appellees for a Rehearing.

3. PLEADING (§ 110*)—PLEA OF PRIVILEGE—WAIVER.

A defendant who filed a plea of privilege to be sued in the county of his residence, and who thereafter filed a pleading styled "original answer," reciting "now comes defendant * * * and not waiving his plea of privilege * * * but insisting thereon, demurs," etc., did not abandon his plea of privilege.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 231–233; Dec. Dig. § 110.*]

4. APPEAL AND ERROR (§ 719*)—QUESTIONS REVIEWABLE—NECESSITY OF ASSIGNMENT OF ERROR—FUNDAMENTAL ERROR.

A judgment in favor of a third person on a contract of indemnity inuring only to the benefit of the indemnitee is fundamentally wrong, so that it may be set aside on appeal without any assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; Dec. Dig. § 719.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by the Bank of Garvin against P. R. Freeman and others, in which defendant E. D. Steger filed a cross-action. From a judgment for plaintiff against defendants, and in favor of E. D. Steger against defendant P. R. Freeman, the latter appeals. Reversed and rendered in part and reversed and remanded in part.

Howe & Stanley and Moore & Park, for appellant. Spaulding & Carr, Cunningham & McMahon, J. G. McGrady, Thos. P. Steger, J. W. Gross, and Richard B. Semple, for appellees.

WILLSON, C. J. The Freeman-Steger Lumber Company was a corporation under the laws of Oklahoma. Half of its capital stock, it seems, was owned by appellant and parties he represented. The other half was owned by E. D. Steger, Gus Steger, and others. The company was indebted in sums aggregating about $30,000, which it could not pay. Among the debts it owed was one for $10,343.92 evidenced by its promissory note dated December 19, 1907, payable six

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

months after its date to the order of the Bank of Garvin. E. D. Steger as an indorser on this note was liable to its owner for its payment. In March, 1908, the company borrowed of appellant the sum of $30,000, and to secure the repayment of the loan executed and delivered to him a mortgage on property it owned. About the same time Gus Steger delivered to appellant capital stock of the company of the face value of $1,000. April 21, 1909, when there was a balance of $5,000 due and unpaid on the note for $10,343.92 above mentioned, same was canceled, and in lieu of it the lumber company made, and said E. D. Steger indorsed, a new note for said balance, payable, as the other one was, to the order of said Bank of Garvin. The suit was by said bank against the lumber company, E. D. Steger, and appellant to recover a balance due on the $5,000 note. The verdict was in favor of the bank against the other parties for $3,404, and in favor of E. D. Steger against appellant for a like sum. The judgment was in accordance with the verdict, except that it was against appellant in favor of said E. D. Steger for only so much as he might pay of the judgment against him in favor of the bank.

The theory upon which the recovery against appellant was had was that he had promised said E. D. Steger out of his own money to pay the $10,343.92 debt due by the lumber company to the bank. The consideration relied upon to support the promise was that E. D. Steger and associates, in compliance with an agreement that they would do so if appellant would pay said debt and others the lumber company owed, had assigned to appellant enough of the capital stock of that company to give him control of it and had turned over to him the management of its affairs, and, further, that appellant afterwards, to induce said E. D. Steger to indorse the note sued on, representing a part of said debt, had promised him to pay it. The verdict involved a finding by the jury that appellant promised E. D. Steger to pay the debt evidenced by the note sued on out of his own means. The sufficiency of the testimony to support such a finding is not questioned in the assignments.

[1] A contention made here by appellant is that, if he promised said E. D. Steger to pay said debt with his own means, his promise was a verbal one to pay the debt of another, and therefore within the statute of frauds. Another contention he makes is that, if he promised said E. D. Steger to pay the debt out of his own means, his promise was to indemnify said E. D. Steger against his liability as an indorser on the note, and therefore was not a promise the bank could sue on. It appeared from the testimony that the lumber company owned several sawmills, and that its business was to manufacture and sell lumber; that it was indebted to various persons in various sums, which it could not pay; that it had to pay its debts or cease to

carry on its business; that it had endeavored to borrow money with which to pay its debts, and failed; that its stockholders met to discuss its condition, and, after inquiry then made, estimated that its debts aggregated about the sum of $30,000; that as a result of the conference of its stockholders, appellant, owning or controlling half its capital stock, agreed with E. D. Steger, Gus Steger, and others, together owning the other half of said stock, to lend the company $30,000 with which to pay its debts, if the company would secure the repayment thereof to him by a mortgage on its property, and if said Stegers and their associates would transfer to him enough of the capital stock of the company owned by them to give him a majority of said stock and the control of its affairs; that, in accordance with the agreement, appellant loaned the company $30,000, the company executed and delivered to him a mortgage on its property to secure the repayment of the loan, said Gus Steger transferred to appellant capital stock of the company of the face value of $1,000, and he assumed the exclusive management and control of the company's affairs; and that with the money he had loaned the company and other property it owned appellant paid debts of the company, improved its mill property, and paid expenses incurred in carrying on its business.

The undertaking on the part of appellant, with reference to the payment of the debts of the company, is stated against him most strongly in the testimony of E. D. Steger. As showing what that undertaking was from said E. D. Steger's and the bank's standpoint, we quote from said E. D. Steger's testimony as follows: "I was on a note for $10,343.92 to the Bank of Garvin, and Mr. Freeman agreed to pay this note of $10,343.92, and paid on the 16th day of April, 1908, $5,000 on it, and it was carried, it seems, from April 16, 1908, the date of that payment, to April 24, 1909, when this $5,000 note was given. * * * This $10,000 note was due the Bank of Garvin, and it was wanting it badly, and Mr. Freeman said to me that, after checking up, he found he was going to be a little short, and asked me if I would consent to his paying half of this note, or it is over half, paying the interest and $5,000, anyhow paying it down to $5,000, if I would consent to his doing that and renew the obligation until he could straighten around, and I went to Mr. Gamble, the president of the bank, and explained the situation to him, and he consented to it, and I renewed the note. * * * Mr. Freeman agreed to pay that $10,000 note. I was indorser on that note, and that was the consideration for making the mortgage and turning the thing over was to get off from all of that paper. * * * I indorsed the $5,000 note that is sued on because Mr. Freeman said it was convenient for him not to pay it at that time, and to have me, as I was already on the bank paper there, to extend it until he could get around to paying

it. * * * Mr. Freeman stated to me, and stated to Mr. Gamble in my presence, that if we would renew this paper that he would pay it. * * * I never dreamed of anything else except that Mr. Freeman would pay this $5,000 note out of his own individual money. I expected nothing else, and Mr. Freeman expected nothing else. * * * I didn't care whether he paid it out of his individual funds or out of stuff on which he had a mortgage. I expected him to pay the note as he agreed to pay everything else and as he did pay everything else. * * * There was always an expectancy on Mr. Freeman's part, after he run out of money, that he would sell stuff of the company to pay it off. * * * The agreement that Mr. Freeman and myself had with the bank at the time this note (the one sued on) was executed as to the time it probably would be paid was that it was to be paid as soon as Mr. Freeman could sell stuff down there that the bank was trying to help us to sell to apply on the note. * * * We borrowed the $30,000 to pay the obligations of the company, and, if that was not sufficient, then we expected to pay the difference out of our ready assets of the company, and liquidate the entire indebtedness of the company at that time. * * * In the event it became necessary under that arrangement for Mr. Freeman to pay this indebtedness to the Garvin bank and he paid it out of his own funds, I understood that Mr. Freeman would then become the creditor of the lumber company, if he paid the debt. Mr. Freeman's understanding with me was that he would indemnify me, save me from any liability on that note."

From the testimony set out it is plain, we think, that if appellant's promise to E. D. Steger was a personal one, and not on behalf of the lumber company as its manger, it was to indemnify said E. D. Steger against his liability as an indorser on the lumber company's note to the bank. The promise was not an unconditional one to pay the debt, but to pay it, or so much of it as the lumber company did not pay, and so save said E. D. Steger from loss because of his liability as a surety for the lumber company. The promise being to indemnify said E. D. Steger, the bank could not sue on it. 16 A. & E. Enc. Law, p. 176; 1 Brandt on Suretyship and Guaranty, § 361; Turk v. Ridge, 41 N. Y. 201. In the work first cited the rule is stated as follows: "A contract of indemnity inures to the benefit of the indemnitee only, and a third person having a right of action or a claim against the indemnitee cannot proceed directly against the indemnitor, though the claim be such as the indemnity contract will apply to save the indemnitee harmless from."

[2] By a proper plea appellant claimed his privilege to be sued in Dallas county where he resided. As he was not liable to the bank, and therefore was wrongfully sued by it (Chauvin v. McKnight, 132 S. W. 386; Groos v. Brewster, 55 S. W. 592), we do not think that the fact that he was before the court as a party to the bank's suit was a reason why his plea was not a good one as against the cross-action brought against him by said E. D. Steger. If his presence before the court as a party to the bank's suit did not authorize the court to disregard his plea of privilege to be sued by said E. D. Steger in Dallas county, and, as just stated, we think it did not, then the plea should have been sustained; for it was not disputed that appellant was not a resident of Fannin county, and was a resident of Dallas county, and that the promise said E. D. Steger sued on was a verbal one.

The judgment in so far as it was rendered in the suit by the bank against the other parties will be so reformed as to adjudge a recovery in favor of the bank against the lumber company and E. D. Steger of the sum adjudged in its favor by the court below, and as to adjudge a recovery in favor of appellant against the other parties of the costs of this court and of the court below. The judgment in so far as it was rendered in the cross-action by E. D. Steger against appellant will be reversed, and the cause as between them will be remanded, with instructions to the court below to transfer same to Dallas county as provided by law in such cases.

## On Motions of Appellees for a Rehearing.

The conclusion reached by this court that Freeman's promise, if a personal one at all, was to pay the debt due to the bank if the lumber company did not pay it, and so save E. D. Steger harmless as against his liability as an indorser of the note, is attacked as in conflict with the finding of the jury, not demanded by the testimony, and therefore erroneous. The jury found that Freeman promised to pay the debt, but they were not authorized by the charge of the court to determine, and did not determine, whether the promise was an unconditional one or not. Therefore the conclusion of this court that the promise was a conditional one was not in conflict with the finding made by the jury. Further consideration of the record has strengthened the conviction entertained at the time the appeal was disposed of, that it conclusively appeared from the testimony that the promise was a conditional one. The lumber company owed debts it was unable to pay. Those debts, the holders of its stock agreed, amounted to about the sum of $30,000. To pay them the company borrowed that sum of Freeman. He was to assume the active and exclusive control of the company's affairs, and with the sum so borrowed and its other assets pay its debts. That such was his undertaking all the witnesses agreed. However, the bank and E. D. Steger contended that his undertaking was further to pay out of his own means such of the debts of the company as its assets, including the sum borrowed, were insufficient to pay. Taking their view of it, we are unable to see how it can be con-

tended that Freeman's promise was other than conditional. It was to pay the debt due to the bank out of his own means, if the assets of the lumber company should prove to be insufficient to pay same. If they proved to be sufficient, he was to be under no obligation to pay out of his own funds. It was not contemplated, if he so paid the bank, that the payment should operate to relieve the lumber company of its liability as the maker of the note. On the contrary, it was understood that, if he so paid the bank, he would be entitled to look to the lumber company for reimbursement of the sum so paid. By such a payment he was to become and be the creditor of that company in the place of the bank. The purpose of the undertaking plainly was not thereby to provide for the payment of the debt, whether it should be necessary to do so to protect Steger from loss or not, but to so pay it if, and only if, it should be necessary to do so to save Steger harmless. The purpose, the sole purpose, of the undertaking, unquestionably was to indemnify Steger against his liability as an indorser of the note. On such an undertaking, as stated in the opinion, the bank could not maintain a suit.

[3] By a plea duly verified and otherwise sufficient for the purpose filed February 1, 1911, Freeman set up a privilege he claimed to be sued in Dallas county where he resided. February 22, 1911, he filed pleadings which he styled his "original answer," and which commenced as follows: "Now comes defendant P. R. Freeman, and, not waiving his plea of privilege filed herein on the 1st day of February, 1911, but insisting thereon, demurs," etc. It was insisted in briefs submitting the appeal, and the insistence is renewed in the motions, that the plea of privilege should be treated as Freeman's original answer, and the other pleading referred to as an amended answer, and that, so treating them, it should be held that the filing of the amended answer operated as an abandonment by Freeman of his claim of a right to be sued in Dallas county. We were of the opinion that this contention should be overruled, and still think so. It would, we think, be unreasonable to hold that Freeman by filing the answer had abandoned his plea of privilege in face of his assertion to the contrary in the answer.

[4] We did not undertake to determine, and will not, whether the assignments required a consideration of the grounds upon which the appeal was disposed of. If the conclusion reached, that the promise, if one was made as contended, was merely to indemnify Steger, is correct, the judgment was fundamentally wrong, and we were authorized, and we think it was our duty, in the absence of assignments attacking it, to set it aside. Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Harris v. Petty, 66 Tex. 514, 1 S.

W. 525; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; Texas Brewing Co. v. Templeman, 90 Tex. 281, 38 S. W. 27.

The motions are overruled.