**YARDLEY et al. v. HOUSTON OIL CO. OF TEXAS et al.   (No. 1402.)** *

(Court of Civil Appeals of Texas.  Beaumont. Nov. 9, 1926.  Rehearing Denied Dec. 1, 1926.)

**1. Appeal and error ⚖⇒773(2)—Failure of appellants to file briefs in time to permit appellee to brief his defense held ground for dismissal.**

Failure of appellants to file briefs in time to permit appellee to brief his defense from time appellants had given him their briefs, *held* ground for dismissal thereof; it being immaterial that appellee's coappellees refused to join in his motion to dismiss.

**2. Judgment** ⬥199(1)—**Since jury's verdict against defendant on limitations did not nullify court's findings on record title, judgment for defendant was not against the verdict.**

Judgment, in trespass to try title, was not non obstante veredicto, notwithstanding verdict of jury was against appellees on issue of limitations, where such verdict did not nullify finding already made by court that appellees had record title.

**3. Appeal and error** ⬥672—**Assignments of fundamental error cannot be considered by Court of Civil Appeals, where to do so it would be necessary to go to statement of facts (Rev. St. 1925, art. 1837; Court of Civil Appeals rules 23, 24, 34).**

Under Rev. St. 1925, art. 1837, and Court of Civil Appeals rules 23, 24, 34, Court of Civil Appeals cannot consider appellants' assignments as raising fundamental error apparent on face of record, where to do so it would be necessary to go to statement of facts.

Walker, J., dissenting.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Trespass to try title by Sarah Yardley and others against the Houston Oil Company of Texas and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Oliver J. Todd and Chas. S. Pipkin, both of Beaumont, for appellants.

Kennerly, Williams, Lee & Hill, of Houston, and Orgain & Carroll, of Beaumont, for appellees.

### Statement of Facts.

WALKER, J. This is a trespass to try title case by the heirs of Stephen H. and Charity Eaton against W. P. H. McFaddin, Houston Oil Company of Texas, W. H. Fitzhugh, and Higgins Oil & Fuel Company. The record herein was filed in this court on the 2d day of January, 1926, and the case set for submission in its regular order at the last term of court. On the ground that appellants had not briefed the case, and on the agreement that it would be regularly briefed before a new submission in time to allow appellees time to prepare their briefs, the submission was portponed. Afterwards, in its due order on the docket, it was again set for submission on October 14th. In the meantime, counsel for appellee Fitzhugh called appellants' attention to the fact that the case had not been briefed, both in personal conversation and by letter, but no briefs were filed in our court nor given to counsel for appellees. On the 4th day of October, after the case had been set for submission, as above stated, counsel for appellee Fitzhugh filed his motion, praying that the appeal be dismissed for the reason that appellants had failed to brief the same. This motion was contested, and appellants offered certain facts in extenuation of their delay, and suggested fundamental errors duly assigned and apparent upon the face of the record. This motion was submitted on the 13th of October, and we entered an order carrying it with the case

On the afternoon of that day appellants filed their printed briefs in this court containing 93 pages. On the morning of October 14th, prior to the call of this case for submission, Fitzhugh filed his motion to strike appellants' briefs from the record. In neither of Fitzhugh's motions did the other appellees join, but when the case was called for submission and the said two motions were called to our attention, counsel for the appellees other than Fitzhugh announced in open court that he was neither asking that appellants' briefs be stricken nor consenting that they be considered. He simply said that he was not making himself a party to the motions in any way; that he had not had time after the receipt of appellants' brief to prepare a brief in the cause. After the case was called and the motions were before us, we announced from the bench that the motion to dismiss the appeal would be denied on the suggestion of fundamental error. Then we heard the motion to strike the briefs, and did not announce any ruling thereon. After hearing the discussion on the issues raised by the motion to strike, we inquired of counsel for appellants if he desired to proceed with the submission, whereupon he announced ready, saying that the errors assigned by him were fundamental, as that term had been construed by our courts, and would have to be reviewed by us, even if the briefs were stricken. Also counsel for appellees announced that they were ready to proceed with the submission. With that announcement, appellants' counsel proceeded to make the following statement:

(a) The land in controversy was granted to Stephen Eaton as a colonist in Lorenzo de Zavala's Colony on the 23d day of October, 1835, under the following field notes:

"The land surveyed to Colonist Eaton is situated north of Taylor's bayou and its survey begins at the southwest landmark of O. W. Watson's survey. Thence south 600 varas were measured and the 2d landmark was raised. Thence south 40 deg. west 1848 varas were measured and the 3d landmark was raised; from which a hickory 8 inches in diameter bears south 80 deg. west 2 varas distant. Thence north 6,660 varas were measured to the northeast landmark of Buvell's survey and established the 4th landmark. Thence west 833 varas and raised the 5th landmark. Thence north 4,066 varas to the southwest landmark of Pevetot's survey and established the 6th landmark. Thence east 2,020.2 varas were measured and raised the 7th landmark. Thence south 8,509 varas were measured to the place of beginning, thus completing the survey of this tract of land containing 15,277,750.5 square

varas. I also made the survey of 9,957,211.2 square varas of land including

Fourth Seal
One-fourth Real [L. S.]

"For the biennial term of 1834 and 1835, a place called Big Hill; which land is situated south of the aforesaid Taylor's bayou and its survey begins at a landmark from which a persimmon 10 inches in diameter bears south 15 deg. east 1.2 varas distant and another do 12 inches in diameter bears south 72 deg. west 4.6 varas distant. Thence south 80 deg. 45' east 100 varas distant. Thence south 70 deg. 30' east 520 varas were measured, thence south 39 deg. 45' east and raised a landmark. Thence south 42 deg. west 550 varas were measured. Thence south 600 varas were measured. Thence south 35 deg. west 450 varas were measured. Thence south 85 deg. west 690 varas were measured and raised a landmark. Thence west 4,502 varas were measured and raised a landmark. Thence north 1,643.5 varas were measured and raised a landmark. Thence east 3,760 varas were measured. Thence north 55 deg. east 800 varas were measured. Thence north 70 deg. east 411 varas were measured to the place of beginning thus completing the survey of the said tracts of land, containing ten labors of the class of arable land and the remaining ones of pasture land, its configuration being that represented on the map which, in duplicate, I inclose to you. Nacogdoches, October 23, 1835.

"J. G. Polaski, Translator,
　(Rubric.)　　Arthur Henrie, Surveyor.
　　　　　(Rubric.)"

(b) On the 22d day of February, 1840, Stephen Eaton and his wife, Charity Eaton, executed to Alexander Patrick the following deed:

"This indenture made the 22d day of February in the year of our Lord, one thousand eight hundred and forty between Stephen Eaton and Charity his wife of the one part and Alexander Patrick of the other part all of the county of Robertson and Republic of Texas witnesseth that the said Stephen Eaton and Charity his wife, for and in consideration of the sum of two thousand dollars to them in hand paid by said Alexander Patrick at and before the sealing and delivery hereof the receipt whereof they do hereby acknowledge and thereof acquit and forever discharge the said Alexander Patrick his heirs, executors and administrators by these presents have granted, bargained, sold, aliened, enfeoffed, released and confirmed and by these presents do grant, bargain, sell, alien, enfeoff, release and convey unto the said Alexander Patrick and to his heirs and assigns all that tract or parcel of land lying and being in the Republic on the north side of Taylor's bayou and joining Watson Pevito & Burrell containing by survey one league and being the same that was granted the said Stephen Eaton and his headright and deed to him on the 24th day of October one thousand eight hundred and thirty-five. Together with all and singular the buildings and other improvements thereon ways, woods, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging or in any wise appertaining. And the reversions, remainders, rents, issues and profits thereof and also the estate,

right, title, interest, property claim and demand whatsoever of them the said Stephen Eaton and Charity his wife in law or equity or otherwise howsoever of in to or out of the same. To have and to hold the said messuage or tenement and tract of one league of land hereditaments and premises hereby granted or mentioned or intended to be with the appurtenances unto the said Alexander Patrick his heirs and assigns to the only proper use and behoof of the said Alexander Patrick his heirs and assigns forever and the said Stephen Eaton and Charity his wife for themselves, their heirs, executors and administrators doth covenant, promise, grant and agree to and with the said Alexander Patrick his heirs and assigns by these presents that they the said Stephen Eaton and Charity his wife for themselves, their heirs, the said above mentioned and described messuage and tract of land hereditaments and premises hereby granted or mentioned or intended so to be with the appurtenances unto the said Alexander Patrick his heirs and assigns against them the said Stephen Eaton and Charity his wife and their heirs and against all and every other person and persons whomsoever lawfully claiming or to claim by, from or under them or any of them shall and will warrant and forever defend by these presents. In witness whereof the said parties to these presents have hereunto set their hands and affix their seals in the presents of Danl Roach and Antone Huste. Witnesses of lawful age and date first above written.

"Interlined with the names of Danl Roach & Antone Huste before

　　　　　"Stephen Eaton　　　　[Seal.]
　　　　　　　　her
　　　"Charity　X　Eaton.　[Seal.]
　　　　　　　mark

"Signed Witnesses:
　"Daniel Roach.
　"Antone Huste.

"Republic of Texas, County of Robertson.

"Before me, Francis Glanter, chief justice for said county, this day personally appeared the above named Daniel Roach & Antone Just the subscribing witnesses to the foregoing deed & after being sworn states that Stephen Eaton & Charity Eaton signed and sealed the foregoing deed in their person and acknowledged the same to be their free and voluntary act and deed from the purposes therein expressed.

"Given under my hand and private seal (having no official seal) this 9th day of March, 1840. Frs. Glanter, Chief Justice in and for Robertson County.

"I do hereby certify the foregoing to be a true copy of the original as received in my office for record on the 14th day of October, 1841.
　　　"Alexander Calder, Clk. Co. Cr. J. C.

"A true copy from old Book D of Jeff Co. Land Records of pages 342 and 343 this 27th day Aug. 1833.
　　　　　"L. L. Miller, Clk. Co. Crt. J. C."

(c) Appellants, who instituted this suit, claim as heirs of Stephen H. and Charity Eaton, and appellees, who were defendants, hold under this Patrick deed.

(d) On the 15th day of October, 1839, Stephen Eaton conveyed his headright league of land, being the land described in the original field notes above given, to E. O. Le

Grande. This deed was not of record when the Patrick deed above given was executed.

(e) Counsel stated that the record, that is the statement of facts, showed that his clients owned a thirty-one fortieth undivided interest under the Le Grande deed, and that appellees owned a nine-fortieth interest. Counsel admitted, after the statement had been made by counsel for appellees, that he had offered evidence by his clients themselves that they were the heirs of Stephen H. and Charity Eaton of Robertson county, and that these heirs, as witnesses in this behalf, had testified in this case that the land in controversy was granted to their ancestor, and that they claimed the land as such heirs.

(f) Counsel for appellants stated that the record showed that the said Stephen H. and Charity Eaton were members of the Nashville Colony, and, as such colonists, were given a headright league in Robertson county about 37 days before the land in question was granted to Stephen Eaton as a member of de Zavala's Colony.

(g) Counsel said that "Big Hill" was south of Taylor's bayou, being one of the most prominent landmarks in Jefferson county, and that the land in controversy was a part of the Big Hill tract described in the original grant as being south of Taylor's bayou, and was some 16 or 17 miles distant from the tract described as being north of Taylor's bayou.

(h) On the 20th day of April, 1911, appellee Fitzhugh executed to W. P. H. McFaddin, one of the original defendants, the following deed, which deed, by its field notes, included the land in controversy:

"The State of Texas, County of Jefferson.

"Know all men by these presents: That I, William M. Fitzhugh of the county of Alameda, state of California, for, and in consideration of the sum of one thousand and fifty dollars ($1,-050.00) to me in hand paid by W. P. H. McFaddin, have granted, sold and conveyed and by these presents do grant, sell, and convey unto the said W. P. H. McFaddin, of the county of Jefferson, state of Texas, all that certain tract or parcel of land containing three hundred and fifty-six (356) acres of land out of the Stephen Eaton survey being abstract No. 21 and known as the 'Big Hill survey,' and being more particularly described by metes and bounds as follows, to wit: Beginning at the southwest corner of lot No. 5, assigned to G. W. Patrick in a partition suit of the estate of Alexander Patrick and wife, Catherine Patrick, deceased; thence north 1,643½ varas to the northwest corner of lot No. 4 partitioned to H. D. Patrick; thence west 1,253½ varas to the northwest corner of lot No. 2; thence south 1,643½ varas to the southeast corner of lot No. 2; thence east 1,253½ varas to the place of beginning, being that tract or parcel of land conveyed to me by Henry T. Beauregard by deed dated June 24, 1910, and filed June 30, 1910, in volume 116, page 29, of the Deed Records of Jefferson county, Tex.

"The foregoing sale of real estate is made exclusive, however, of all the mineral and oil rights, which are hereby especially reserved to the vendor.

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said W. P. H. McFaddin, his heirs and assigns forever.

"And I do hereby bind myself, heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said W. P. H. McFaddin, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at San Francisco this 20th day of April A. D. 1911.

"William M. Fitzhugh.
"Witnesses at request of grantor:
    "Geo. N. O'Brien.
    "E. J. Brakey."

(i) McFaddin, as already stated, was originally made a defendant; but, on a severance had by him, judgment between him and appellants was entered, awarding McFaddin the surface rights to the land described in his Fitzhugh deed and to appellants the mineral rights.

(j) The case was submitted to the jury on special issues, wherein the court instructed the jury as follows:

"You are instructed as a matter of law that the deed introduced in evidence from Stephen Eaton and Charity Eaton to Alexander Patrick, dated February 22, 1840, operated to convey the entire Stephen Eaton headright league, Jefferson county, Tex., which was granted to Stephen Eaton by commissioner of Zavala's Colony on the 24th day of October, 1835, but the court submits to you for your determination the following questions. * * *"

Following this instruction the court submitted to the jury the issue of limitation as claimed by appellees, and which the jury found against appellees' contention. The issue of limitation is not involved in this appeal.

(k) Judgment on the charge of the court and verdict of the jury was entered in favor of appellees for the land in controversy.

(l) Appellee filed proper exceptions to the court's charge as given, filed a motion for new trial, assigning errors in their motion as follows:

"The court erred in that part of the charge which is as follows: 'You are instructed as a matter of law that the deed introduced in evidence from Stephen Eaton and Charity Eaton to Alexander Patrick, dated February 22, 1840, operated to convey the entire Stephen Eaton headright league, Jefferson county, Tex., which was granted to Stephen Eaton by commissioner of Zavala's Colony on the 24th day of October, 1835.' And plaintiffs say that said finding is erroneous and wholly contrary to law, for the following good and sufficient reasons:

"A. Because said deed, in order to convey title to any part of the league in controversy, would have to have been made by the Stephen Eaton, who was a colonist in Zavala's Colony,

and the uncontroverted evidence shows that the purported conveyance was made by Stephen H. Eaton, whose wife was Charity Eaton and who was a colonist in the Nashville Colony and as such had already satisfied his claim against the government by receiving a headright in Robertson county, and therefore, as a matter of law, could not have had authority to transfer the league which was granted to the colonist brought to Texas by de Zavala.

"B. That, if there be any facts and circumstances which legally avoid the conclusion or have any tendency to show that the officers violated their duty by issuing two grants to the same individual, then, in any event, the court could not legally tell the jury, as a matter of law, that the Stephen Eaton, the colonist, in the Nashville Colony, by his act in attempting to make a conveyance of the land granted to the colonist in Zavala's Colony, had passed the title thereto.

"C. Said paragraph is further more erroneous in this, that, as a matter of law, the deed in question does not pass the title to the entire Stephen Eaton headright league, because the deed in question calls for one tract of land, while the court finds, as a matter of law, it conveys two.

"D. The said charge is furthermore erroneous in this, that the only land described in said deed is land situated north of Taylor's bayou, while the court in his charge holds, contrary to said description, that it includes land south of Taylor's bayou.

"E. Because, under the settled law of Texas, a call for an artificial object ties the land to the ground, in the absence of calls for natural objects; and it is well settled that an existing survey located upon the ground is such an artificial object; and it is also well settled that a call for a bayou or a stream is a call for a natural object, and the deed in question ties the land north of Taylor's bayou, and also ties the same to three artificial objects, that is to say, to Watson's survey, Burrell's survey, and Peveto's survey, and notwithstanding such calls constituting a perfect particular description, the court has, contrary to law, included therein an entirely separate survey located some 10 miles south of Taylor's bayou, which is in no manner referred to in said deed.

"F. That in no event, even in case of ambiguity in the instrument, could the court tell the jury, as a matter of law, that a survey described as one survey, calling for one natural and three artificial objects north of Taylor's bayou, and being the only survey or tract of land to which such particular description could apply, as a matter of law, includes two tracts of land, one of which is in no manner included in the particular description in the deed.

"G. Because said deed does not purport to have been executed in accordance with law, so as to have constituted a valid conveyance of the land, if it had been executed by the owner of the land in controversy, and had described the same."

On oral argument, appellants advanced the proposition to us that these assignments as brought forward in the transcript presented for our consideration the following fundamental errors: (a) That the trial court erred fundamentally in finding, as a matter of law, that

288 S.W.—55

the Robertson county Stephen and Charity Eaton were the original grantees in the Eaton grant in this county; that, as a matter of law, he should have found that the land was not the property of the Robertson county Eatons, but of a different Eaton, who was a member of the de Zavala Colony, and that he erred fundamentally in not so finding; (b) that, if it was not error to so find, as a matter of law, then it was fundamentally erroneous not to submit the question of identity as between Stephen H. Eaton of Robertson county and Stephen Eaton of de Zavala's Colony as an issue to the jury; (c) that the court erred fundamentally in his construction of the deed from Stephen and Charity Eaton to Alexander Patrick, in telling the jury, in effect, that it conveyed to Alexander Patrick all of the Stephen Eaton headright, as the same is described in the original grant; (d) that the court erred fundamentally in not submitting the issue of innocent purchaser as against the claim of appellees, who hold under the Alexander Patrick deed, which was junior to the Le Grande deed; (e) that the court erred fundamentally in its construction of the deed from Fitzhugh to McFaddin, appellants claiming that by that deed Fitzhugh had granted to McFaddin all his rights in and to the minerals, as well as the surface rights.

These propositions are also raised by special charges requested by appellants, as shown in the motion for new trial as brought forward in the transcript.

It must be conceded that all the errors urged by appellants were duly assigned in their motion for new trial, as brought forward in the transcript. On the facts stated by appellants, as we have detailed them, appellees made no contest, except to say that neither they nor the trial court nor the appellants could have determined the extent of the claim of the respective parties under the Le Grande deed, and they doubted if this court could make such a finding. However, appellees did not admit the correctness of the statements made by appellants' counsel. The written instruments as we have given them in this opinion are not in the pleadings of the parties, but can be found only by going to the statement of facts, where they can be easily found by a reference to the index. Neither appellants nor appellees have suggested that the court would have to look to any evidence outside of the deeds themselves to construe these deeds, and there was no suggestion by any party that any evidence was offered tending to vary their terms or to affect or modify the rights which they purported to grant, except appellees read from appellants' petition as found in the transcript description of the land in controversy, which was as follows:

"That heretofore, to wit, on the 1st day of January, A. D. 1923, the plaintiffs above named were seized and possessed as tenants in common in fee simple of all that certain tract, piece,

or parcel of land lying and being situated in Jefferson county, and being a part of the Stephen Eaton headright at Big Hill in said county, and being what is known as block No. three (3) of the Patrick subdivision of said survey, and being more particularly described as follows: 'Beginning on the north line of the Stephen Eaton survey at the northeast corner of survey No. 2, set apart to John T. Atkinson assignee of W. W. Patrick in the partition of the Alexander Patrick estate; thence east with the north line of said Stephen Eaton survey 1, 253.5 vrs. to the northwest corner of subdivision No. 4 of said Patrick subdivision; thence south with the west line of subdivision 4 and 5 of said Patrick subdivision 1,643.5 vrs., to the southwest corner of subdivision No. 5 on the south line of said Stephen Eaton survey 1,253.5 vrs. to the southeast corner of the aforesaid subdivision No. 2; thence north with the east line of said subdivision No. 2, 1,643.5 vrs. to place of beginnng.' "

After reading the description, appellees advanced the proposition that the land claimed by appellants could not be identified without a search of the record for testimony locating it on the ground and showing that it was not a part of the land described in the Patrick deed as being north of Taylor's bayou.

### Opinion of the Court.

(1) The motion to dismiss this appeal must be overruled, as against the assignments of fundamental error.

[1] (2) The motion to dismiss appellants' briefs must be sustained. Appellee Fitzhugh made a showing of affirmative injury on a submission to be had on the 14th of October. Clearly he had not had time to brief his defense from the time appellants had given him their briefs, which was some seven or eight days before the briefs were actually filed in this court. The refusal of Fitzhugh's co-appellees to join in his motions cannot prejudice his rights. The briefs cannot be considered, since such consideration would injure Fitzhugh, and, as he was the grantor under whom the other appellees claim, necessarily their interests are identical and the consideration of the briefs against the coappellees would be to the injury of Fitzhugh. Appellants' only relief against the motion to strike their briefs was to ask for a postponement of submission. Having agreed to a submission on the 14th and announced ready on the submission, the extenuating facts advanced by them in their answer cannot in any way save their briefs. Their suggestion that Fitzhugh be allowed to brief the case after submission cannot afford them relief, because he had the right, under the statute and the rules of the Supreme Court, to prepare his briefs and submit them for the consideration of this court before the case was submitted on its merits.

[2] (4) The judgment of the court was not non obstante veredicto within the rule announced by Judge Sonfield in Heimer v. Yates (Tex. Com. App.) 210 S. W. 681, nor under any other authority from our appellate courts as we understand them. It is true the verdict of the jury was against appellees on the issue of limitation, but the trial court found facts in the first paragraph of its charge whch. entitled appellees to a judgment, and on such facts the court, if correct in giving the instruction, could have peremptorily charged the jury to return a verdict for appellees. The limitation issue, had it been found in appellees' favor, would have been only an additional title upon which they could have had judgment; but a finding that they had no limitation did not nullify the finding already made by the court that they had the record title.

[3] The errors assigned by appellants against that portion of the court's charge wherein the jury were told that the deed from Eaton to Alexander Patrick operated to convey the entire Stephen Eaton league, and the court's construction of the Fitzhugh-McFaddin deed, and the refusal of the court to submit the issue of identity as between the two Eatons, as claimed by appellants, presents the most interesting and, to us, disturbing question of fundamental error.

Article 1837, Revised Civil Statutes, under the last codification, is as follows:

"A trial in a Court of Civil Appeals shall be * * * 7. * * * upon * * * error in law either assigned or apparent upon the face of the record."

The following rules prescribed by the Supreme Court to aid the Courts of Civil Appeals in disposing of fundamental error are in point:

"23. Said record should contain an assignment of errors as required by the statute. If it does not, the court will not consider any error but one of law that may be apparent upon the record, if the judgment is one that could legally have been rendered in the lower court and affirmed in the appellate court."

"24. The assignment of error must distinctly specify the grounds of error relied on and distinctly set forth in the motion for a new trial in the cause, and a ground of error not distinctly set forth in a motion for a new trial in the cause and not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived, unless it be so fundamental that the court would act upon it without an assignment of error as mentioned in rule 23."

"34. In propositions relating to fundamental errors of law apparent upon the record, enough must be stated to make the error of law which pervades the case obviously apparent, without requiring the court to search through the record to find errors, which will not do unless properly pointed out, if the judgment is one which the trial court is competent to render in such a case."

Construing article 1837, cited under the old number of 1014, Judge Brown said, in Hous-

ton Oil Co. v. Kimball, 103 Tex. 103, 122 S. W. 537:

"Webster defines the word 'apparent' thus: 'Clear or manifest to the understanding; plain; evident; obvious; appearing to the eye or mind.' This does not mean that an error which can be ascertained by looking into the record and considering the evidence may be considered without an assignment, for that would include every error * * *. which cannot be made apparent by an examination of the record. Therefore the language of the statute must be given that construction which will make it consistent with its requirements in other respects. The language, 'apparent upon the face of the record,' indicates that it is to be seen upon looking at the face of the record (that is, the assignment itself), the fact pointed out by it must show a good and sufficient ground for the court to interfere to prevent injustice being done to one of the parties. Perhaps the best expression is that it must be a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily. Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Searcy v. Grant, 90 Tex. 97, 37 S. W. 320; Fuqua v. Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Harris v. Petty, 66 Tex. 514, 1 S. W. 525."

Discussing that decision, Judge Powell said, in Eagan v. Lockney Farmers' Coop. Soc. (Tex. Com. App.) 284 S. W. 937, that, in defining fundamental error, Judge Brown "was in a sense blazing the way." In construing what Judge Brown said, the Courts of Civil Appeals have been and continue even to this date in irreconcilable conflict. On this conflict, Judge Powell said in his Eagan Case, supra, discussing the former holding by him in Ford & Damon v. Flewellen (Tex. Com. App.) 276 S. W. 903:

"The writ of error was granted in the Flewellen Case to settle this very conflict. We settled it in these words: 'We do not think it is necessary to add anything to what has been said in the Kimball Case and the instant case. When, as stated by the Court of Civil Appeals in this case, the only method for determining whether or not a fundamental error has been committed is by going through the entire statement of facts, then that court is not required to pass upon such a question. Any other rule, as we see it, would place an almost unbearable burden upon our appellate courts.' "

But in his Eagan Case, Judge Powell again tried to assist the Courts of Civil Appeals to an understanding of the Flewellen Case. He said, immediately following the quotation just made:

"Then, let us see whether or not the Court of Civil Appeals in the instant case is in conflict with our holding just quoted. In the first place we did not hold that the erroneous giving of a peremptory charge is not a fundamental error so far as its importance is concerned. Neither does the Court of Civil Appeals in the case at bar. In fact, as stated by the authorities the latter court cites such an error is of sufficient importance to be classed as fundamental. In fact, this much must be conceded. It cannot well be disputed. A peremptory instruction necessarily affects the judgment and controls it. Nor did the Court of Civil Appeals make any statement to the effect that it would be necessary to read the entire statement of facts in order to determine whether or not there was at least one issue which should have gone to the jury, and therefore render erroneous the general peremptory instruction which was given. Therefore it is not true that the opinion in the instant case is, in any sense, in conflict with other decisions as claimed by the plaintiff in error in his application.

"Again, in the Flewellen Case, there was absolutely no assignment of error, defective or otherwise, either in the district court or Court of Civil Appeals. In the case at bar, there is an assignment of error with reference to the giving of the peremptory instruction. We will discuss this later. But, even though it had been necessary to treat the assignment as being absolutely worthless, it does not appear from the opinion of the Court of Civil Appeals that it was necessary to read the entire statement of facts in order to discover whether or not it was error to give the peremptory instruction. And, as we shall show later, it was not necessary to do so in fact. Consequently, even upon that theory, the court would seem to have had the right to pass upon the correctness of the peremptory charge as a fundamental error. In the Kimball Case, Judge Brown said: 'Perhaps the best expression is that it must be a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily. Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Searcy v. Grant, 90 Tex. 97, 37 S. W. 320; Fuqua v. Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Harris v. Petty, 66 Tex. 514, 1 S. W. 525.' "

On the same day that Judge Powell handed down the Eagan Case, Judge Speer, who was also laboring with the problem of fundamental error, handed down the opinion in Waggoner, etc., v. Sigler, etc. (Tex. Com. App.) 284 S. W. 921, wherein he said:

"What we have said disposes of the case, yet there is presented in the petition for writ of error a question of practice of such importance that we deem it proper to decide it.

"The Court of Civil Appeals held that there was no evidence to support the decree of specific performance rendered by the trial judge, and, there being no assignment of error raising this question, that the same was fundamental error, for which it reversed the judgment of the district court. This we think was error in the Court of Civil Appeals. The right of the Court of Civil Appeals to reverse the judgment of a district court depends upon an error being assigned in the manner prescribed by law or the existence of an error apparent upon the face of the record, commonly referred to as fundamental error. Roberson v. Hughes (Tex. Com. App.) 231 S. W. 735. Unless error appears in one of these ways, that court has no power to reverse. An error which requires the Court of Civil Appeals

to search the statement of facts is not that fundamental error which the court is required to examine. Ford & Damon v. Flewellen (Tex. Com. App.) 276 S. W. 903. If a Court of Civil Appeals is not required to search the record in support of such a pretended error, it is because the same is not fundamental, and, of course, if it is not fundamental, the court has no right to consider it, however willing it may be to do so."

Seemingly there was a difference in opinion among the members of section B of the Commission of Appeals as to what, in fact, constituted fundamental error.

In Moody v. Early-Foster Co., 246 S. W. 1087, the San Antonio Court of Civil Appeals went to the statement of facts in order to review an assignment of fundamental error.

It was held by Judge Powell in his Flewellen Case, supra, that the San Antonio court committed error in so doing. The decision thus criticised by Judge Powell was written by Judge Smith of the San Antonio court. Yet in Nichols v. Heard, 282 S. W. 831, an opinion by Judge Cobbs rendered more than five months after the handing down of the Flewellen Case, the San Antonio court persisted in the same holding as made in the Moody Case, and, at the present term, the Supreme Court has granted a writ of error against it, on the ground that it was not satisfied with that holding. Clearly the San Antonio court did go to the statement of facts and did examine the evidence in disposing of these cases, yet we find the same court, in an opinion by Chief Justice Fly, in Kenedy, etc., v. Ainsworth, 281 S. W. 637, wherein rehearing was denied on the 10th day of March, 1926, holding:

"We cannot, in examining the record for fundamental error, go into the statement of facts."

However, that statement is predicated on the statement that no assignments of error were in the record.

On the statement we have made of the facts of this case, my brethren have concluded, after a most careful review of the authorities, that we cannot consider appellants' assignments as raising fundamental error apparent upon the face of the record. It is their conclusion that we cannot consider the undisputed facts as detailed in oral argument, and that we cannot "go to the statement of facts." While the written assignments of error point out the deeds which appellants say the court erred in construing, it is the opinion of my brethren that these assignments standing alone do not point out fundamental error apparent upon the face of the record, since without going into the statement of facts we cannot say the exact effect these deeds had upon the case, and, since in construing them the trial judge had before him all the evidence, we cannot say that he had erred, unless we, too, could review them in the light of all the facts as shown by the statement of facts. It is not their purpose to announce any new rule for detecting fundamental error apparent upon the face of the record, but they believe that the facts of this case bring it directly within the rule announced in the Kimball Case, as construed by the Commission of Appeals and Judge Fly in his Ainsworth Case.

It follows, of course, that the assignments of error cannot be reviewed, except on the issue of the judgment being non obstante veredicto, and we are in agreement on that point.

On the four propositions above announced, and on the holding of the majority that no fundamental error apparent on the face of the record has been brought to our attention, the judgment of the trial court is affirmed.

In concluding the discussion for the court on the issue of fundamental error, it would not be improper to say that it is the opinion of Mr. Justice O'Quinn in construing rule 34, supra, that, in the absence of a brief, whether the assignments of error as filed in the trial court point out the error or not, in considering fundamental error, the Court of Civil Appeals can only read the pleadings of the parties, the charge of the court, the verdict of the jury, and the judgment of the court, and if the charge properly submits the issues as stated in the pleadings, and if the verdict of the jury is in response to the charge of the court, and if the judgment follows the verdict of the jury, then no fundamental error apparent upon the face of the record is before the court.

### Dissenting Opinion.

With the greatest respect for my brethren, I most respectfully dissent from their conclusions on the propositions of fundamental error. As I understand article 1837, supra, it deals with two kinds of "error in law," that is, fundamental error, (a) "error in law assigned * * * upon the face of the record," and (b) "error in law * * * apparent upon the face of the record." All of the decisions upon which my brethren base their opinion involved fundamental error not "assigned" but "apparent upon the face of the record." This distinction is recognized by Judge Brown in his definition in the Kimball Case. He says the error in that case was not assigned, and not being an assigned error, yet one "in law," he defines "apparent upon the face of the record." In all the other cases cited, the conclusion is expressed that the errors complained of are not "assigned." That being so, the courts, however, with different results, base their conclusions on the proposition of fundamental error upon Judge Brown's definition.

An "assigned" error fulfills all the conditions required by Judge Brown. In this case the particular errors complained of are pointed out. They go to the very foundation of the case. The facts upon which the errors

are predicated are called directly to our attention by the assignments, which must be conceded to be a part of the "face of the record." If the court erred in his conclusions of law on these facts—that is, (a) in construing the Eaton-Patrick deed; (b) in construing the Fitzhugh-McFaddin deed; (c) in failing to submit the issue of identity as between the Nashville Colony Eaton and the de Zavala Colony Eaton—the error is one of law going to the very foundation of the case, and necessarily controls the judgment of the court.

The deeds referred to are "easily seen" by a mere reference to the statement of facts. Being valid, unambiguous deeds—that is, capable of expressing the intent of the parties by the language used—the burden rested upon the trial court to construe them, and, as a matter of law, determine their effect. He could not construe them in the light of the attending facts and circumstances, nor was he aided in his construction by any oral testimony in the record. That being his duty, and the error, if any, in his construction being pointed out to us, it becomes our duty, as I understand article 1837, supra, to review the trial court's conclusions.

But if my brethren are right in their conclusions that an "assigned" error, not brought forward in a proper brief, loses its place in the record and occupies no higher place than one unassigned, still I think they are in error in their conclusions. I do not agree with Judge Fly in his proposition in the Ainsworth Case, supra, and think my brethren have erred in following him, that "we cannot, in examining the record for fundamental error, go into the statement of facts." Clearly this proposition is not in accord with Judge Speer's announcement in the Waggoner Case, supra, wherein he says:

"If a Court of Civil Appeals is not required to search the record in support of such a pretended error, it is because the same is not fundamental."

But Judge Powell, in his Eagan Case, draws a clear distinction, as shown by the quotation made, supra, between his Flewellen case, where the Court of Civil Appeals examined the "entire" statement of facts, and the Eagan Case, where no such statement was made, holding that the distinction relieved the Eagan Case of the assignment of being in conflict with the Flewellen Case.

It follows from this distinction that it is not error for a Court of Civil Appeals to go to the statement of facts, provided it is not necessary "to read the entire statement of facts." While this distinction seems to be technical in the most narrow meaning that could be assigned to that term, it is recognized by our Supreme Court and thereby made the basis of property rights.

In drawing that distinction, Judge Powell had the authority of the Supreme Court for what he said. It was held by the Commission of Appeals in Harlington, etc., v. Houston Motor Car Co., 209 S. W. 145, that fundamental error was "apparent upon the face of the record," provided the facts given in the brief were sufficient to call the error to the court's attention, and the authorities cited for that proposition fully sustain the conclusion. This court followed that case in Settlement & Development Co. v. Village Mills Co., 230 S. W. 869, and Wilson v. Armstrong, 236 S. W. 756. Also I think that Judge Brown, in his Kimball Case and the authorities cited by him, clearly recognizes that the briefs are sufficient to require a Court of Civil Appeals to review an assignment of fundamental error.

Again, from the decisions cited by Judge Brown, even by his statement in the Kimball Case, it is clear that the Supreme Court does go, at least to a limited extent, to the statement of facts, to the extent that justified Judge Powell in his conclusion that a Court of Civil Appeals is not in error in examining the record for fundamental error, provided it does not read the "entire" statement of facts.

Having sent the Court of Civil Appeals to the briefs of the parties, the Supreme Court must recognize that we rest under the duty of following these briefs into the statement of facts to reconcile conflicting statements of the facts which occur most frequently.

For these reasons, I conclude that my brethren are in error in refusing to go to the statement of facts at all, on an assignment of fundamental error, even if it is of the class not assigned but only "apparent upon the face of the record." In this case the refusal must be absolute; for even the most casual examination of the statement of facts would reveal the facts upon which the assigned errors are based.

But I would follow the logic of Houston Motor Car Company and the Eagan Case, supra, both of which send us to the briefs of the parties. It cannot be contended that the briefs are a part of the "record" as that term is used in the statute. The cited authorities must rest upon the proposition that, when briefs are duly filed, it is our duty to read them. Having read them, we know judicially the facts in the case. Knowing these facts judicially, it is our duty to review all fundamental errors disclosed thereby. An oral argument is of equal dignity, to the extent of its office, with the written brief. The facts disclosed on oral argument are before us as fully and as judicially as when given in a brief. We would labor under no greater burden to reconcile conflicting oral statements than conflicting written statements. On the oral argument in this case, the facts were

without conflict. An oral argument, no more than a written brief, would force us to review errors that are not fundamental; that is, errors "in law."

I do not agree with counsel for appellees in their proposition made on oral argument that we cannot identify the land in controversy as not being a part of the tract north of Taylor's bayou without going to the statement of facts. The land in controversy is tied to the "Big Hill" tract. "Big Hill" and Taylor's bayou are two of the most prominent natural objects in Jefferson county, of which we must take judicial notice, and of their relation to each other. In Railway Co. v. State, 72 Tex. 404, 10 S. W. 81, 1 L. R. A. 849, 13 Am. St. Rep. 815, it was held:

"A court is bound to take judicial knowledge of the leading geographical features of the land; the minuteness of the knowledge so expected being in inverse proportion to the distance."

Many authorities are cited and reviewed in 7 Ency. of Evidence, 910–914.

### On Rehearing.

Appellees have made 11 criticisms of our opinion, which we dispose of as follows:

(1) We overrule appellees' request to strike from the opinion the undisputed facts as detailed in oral argument. Appellees are correct in saying that the majority of the court did not consider the facts on any issue suggested, since without a brief it was their conclusion that we were without jurisdiction to review the errors suggested by appellants as fundamental. The facts were given in the opinion only as a part of the argument of the case as made before us, and were given that the positions of the majority and minority of the court, respectively, might be made clear.

(2) As requested by appellees, we make the following additional statement, taking the same from appellees' motion:

"After it had been announced from the bench by Chief Justice Hightower that the motion to dismiss the appeal had been overruled on account of the contention by appellants that the record does show fundamental error, but that the motion to strike the briefs had not been acted on but was being taken with the case, and that, therefore, the court would hear the contention of counsel for appellants that there was fundamental error in the case."

(3) (7) (8) (9) The suggestions in these paragraphs of appellees' motion have been written into the original opinion.

(4) (6) We further find that, on oral argument the appellees advanced the proposition:

"That the court would have to examine the entire statement of facts in order to determine what effect upon the court's decision of the case the errors assigned by appellants had, if they were, in fact, errors."

Appellees have misconstrued our opinion when they say, as they do in their motion, that it "indicates that the court has held that appellees would be required to make as full and as all-inclusive a statement in oral argument as they would have been required to make in response to a brief filed within the time and in the manner required by the statutes of the state and the rules of the Supreme Court."

(5) We find that appellees, in oral argument, advanced the following proposition, which we take from their motion:

"Appellees urged that, before it could be determined what land was conveyed by the said deed to Patrick, the description would have to be applied to the ground, and that, regardless of whatever information the court might have by reason of the doctrine of judicial notice as to the location of Big Hill in Jefferson county, it could not take judicial knowledge as to the location of the other surveys of land which the Patrick deed called for and could not therefore say from the face of the deed alone, without knowing where such other surveys were located, that the said Patrick deed conveyed land which was altogether north of Taylor's bayou."

(10) (11) These objections raise only hypothetical questions, which, for that reason, require no further discussion.