## J. B. Pope v. D. M. Beauchamp et al.

No. 2647. Motion No. 4335. Decided March 3, 1920.

(219 S. W., 447.)

### 1.—Negotiable Note—Vendor's Lien—Innocent Purchaser.

The assignee of a negotiable note secured by a vendor's lien, if an innocent purchaser before maturity, becomes in substance, a mortgagee, and is protected, both as to the debt evidenced by the note and the security for its enforcement, against defenses which might otherwise defeat a foreclosure. (Pp. 275-277).

### 2.—Same—Lis Pendens.

The doctrine of *lis pendens* does not apply to negotiable instruments; an innocent purchaser of a vendor's lien note is not charged constructively with notice of a pending suit to set aside a former sale of the land for fraud, (Pp. 275-277).

### 3.—Same—Statute.

The Act of April, 1905, Laws, 29th. Leg., Ch. 128, p. 316, providing for recording notices of *lis pendens*, does not enlarge, but limits, the effect of such pending suit as notice to an innocent purchaser of negotiable paper, affecting the title to the land on which it is secured. (P. 278).

### 4.—Innocent Purchaser—Transfer of Note—Injunction.

The way to prevent the circulation of negotiable instruments pending a litigation affecting them is to require same to be delivered into the custody of the court. The innocent purchaser cannot be affected by an injunction against the holder forbidding transfer. (P. 276).

### 5.—Innocent Purchaser—Presumption of Good Faith—Payment of Value.

A purchaser of a promissory note for value and before maturity, in the absence of facts charging him with notice that land on which it was secured was obtained by fraud, need not introduce further evidence of good faith to entitle him to protection, the burden of proof being then on the one seeking to defeat it. But, if the evidence as to payment of value leaves that in question, his protection as an innocent purchaser becomes a question of fact for the jury. (Pp. 279, 280).

### 6.—Jury—Uncontradicted Evidence.

A plaintiff's claim to hold a note as an innocent purchaser cannot be held established as matter of law because evidence to that effect was uncontradicted. The jury having the right to pass on the credibility of a

witness may disregard his evidence if they believe it untrue from his manner of testifying, prejudice, or interest in the result, though neither impeached nor contradicted.   (P. 280).

### 7.—Contradictory Charges.

In an action for forclosure a charge that such relief could not be had if title to the land incumbered by the note and lien which plaintiff claimed to hold as an innocent purchaser was obtained by fraud was erroneous, and this error was not cured by a later and contradictory paragraph of the charge permitting foreclosure if plaintiff was an innocent purchaser.   (P. 280).

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Denton County.

The suit was by Pope to recover on a note and foreclose a vendor's lien securing it. The land in question was owned by Rutherford, against whom foreclosure was sought. Wright had procured from him by fraud a conveyance of the land and transferred the same to Beauchamp who executed the note sued on secured by vendor's lien. Rutherford sued to cancel the sale for fraud, and procured injunction against Wright transferring the note. Wright, however, transferred the note to Maxwell, who transferred it to Mrs. Stephens, who transferred to Pope. All these transfers were made after Rutherford instituted suit and had filed notice of *lis pendens* in accordance with article 6837, Rev. Stats. He recovered back the land in his suit, but to this the holders of the note were not parties. Pope sought and obtained recovery on the note against the maker Beauchamp, and indorser Maxwell, Wright having disappeared. He also sought foreclosure of his vendor's lien on the land against Rutherford, on the ground that he was an innocent purchaser of the note and lien and that his assignor, Mrs. Stephens was also an innocent purchaser. The judgment of the trial court denied foreclosure, and Pope appealed.

The Court of Civil Appeals, finding Pope to be interested in the note as collateral security only, allowed him protection as an innocent purchaser to the extent of his loan only, and reversing, rendered judgment awarding him foreclosure to that extent. They found against his claim for protection as purchaser from Mrs. Stephens, whom the trial court also found not to have been an innocent purchaser, 159 S. W., 867. On these rulings both Pope and Rutherford obtained writs of error.

The case was referred by the Supreme Court to the Commission of Appeals, Section B. Their opinion recommended that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed, and this judgment was adopted by the Supreme Court, 206 S. W., 928. On motion for rehearing the Supreme Court pronounced the opinion, here published, reversing and remanding the cause for a new trial.

*V. K. Wedgeworth* for plaintiff in error Pope.—Where plaintiff, the assignee of a vendor's lien note and the lien securing the

same, is seeking to foreclose and proves by the legal import of all necessary instruments that he is the owner of the note sued on and that he purchased same before maturity and for value and where he proves by additional oral testimony that he and his immediate vendor and his remote vendor each paid value for said note; which fact is not contested by defendant; and where defendant resists foreclosure on the ground that he was defrauded out of the land by his vendee, but fails to fasten fraud or notice of fraud upon plaintiff or upon plaintiff's remote vendor, plantiff is entitled to peremptory instructions for foreclosure of his lien for the full amount of the note. Gannon v. National Bank, 18 S. W., 573; Buchanan v. Wren, 30 S. W., 1077; Letcher v. Reese, 60 S. W., 256; Austin v. Lauderdale, 83 S. W., 413; Sayles' Supp. Statutes, 1906, p. 317, Arts. 1 to 4. As to injunction and *lis pendens* affecting negotiable securities, see Farmer's Natl. Bank v. Waco Electric Co., 36 S. W., 131; 21 Am. & Eng. Ency Law (2nd Ed) 628. As to notice to purchaser before maturity in due course of trade, see Rotan v. Maedgen, 59 S. W., 585, and cases cited; Wright v. Hardie, 30 S. W., 675; Citizen's Tr. & Sav. Bank v. Stackhouse, 74 S. E., 977. As to effect of judgment cancelling prior deed, see Bradley v. Luce, 99 Ill., 234.

Stephens was a purchaser in due course of trade, before maturity, and for value, without notice of any fraud, and acquired indefeasable title to both the note, lien, and superior title to the land. Stephens therefore conveyed good title to Wedgeworth and to Pope, regardless of whether Wedgeworth had any notice of fraud, actual or constructive; and plaintiff's rights as collateral holder, together with the consent of Wedgeworth given in plaintiff's trial amendment that plaintiff recover full amount of note, gave plaintiff absolute right to recover full amount of note, with interest, and to have foreclosure of lien. Herman v. Gunter, 18 S. W., 428; Wilson v. Denton, 18 S. W., 620; Taylor v. Callaway, 27 S. W., 934; Denton Lumber Co. v. First Natl. Bank, 18 S. W., 962; Toullerton v. Mahncke, 32 S. W., 238; 23 Am. & Eng. Enc. Law (2nd Ed) 476-477.

The deed of trust executed by Beauchamp to Wiley operated to create a lien on the premises conveyed to secure the three notes therein described, and said lien was superior to any rights acquired by Rutherford by the filing of his petition in the cause of Rutherford v. Wright, or the notice of *lis pendens*, or the judgment rendered in said cause. For a case exactly in point we cite again Bradley v. Luce, 99 Ill., 234.

Plaintiff as a collateral holder was entitled to foreclosure for full amount of note and costs. Texas Banking & Ins. Co. v. Turnley, 61 Texas, 365; Taylor v. Callaway, 27 S. W., 934; 4 Am. & Eng. Ency. Law (2nd Ed) 289 and cases cited.

Plaintiff being the transferee of the vendor's lien and lien or mortgage created by the deed of trust from Beauchamp to Wiley for value and before maturity, was entitled to foreclosure as prayed for. Simmons Hardware Co. v. Kaufman, 8 S. W., 283; Taylor v. Callaway, 27 S. W., 934.

Even though defendant Rutherford had been defrauded out of his land this fact could not operate to deprive plaintiff of his right to recover on foreclosure, there being no evidence that plaintiff participated in or had notice of such fraud. Taylor v. Callaway, 27 S. W., 934; Gill v. First Natl. Bank, 61 S. W., 146; 6 Ency. Evidence, sec. B.

The court erred in giving paragraph 11 of his charge, in which he submitted to the jury the issue of *bona fides* on the part of Stephens and wife in purchasing the note sued on, and also the issue as to whether or not they paid value. T. & P. Ry. Co. v. McCoy, 38 S. W., 36; Ralls v. Parish, 151 S. W., 1089; Sayles, Rev. Civil Stats., art. 4863.

Plaintiff having made a *prima facie* case by the introduction of the note and transfers, the burden was on defendant to prove fraud; having proved fraud, the burden was then on plaintiff to prove that he or one of his vendors had paid value, and plaintiff having done this, the burden was then on defendant to prove that neither plaintiff nor any one of his vendors was an innocent purchaser. Ralls v. Parish, 151 S. W., 1089; Cleveland v. Butz, 35 S. W., 804; Martin Brown Co. v. Cooper, 17 S. W., 1051; LaPage v. Slade, 15 S. W., 496; Tillman v. Heller, 14 S. W., 700; Gill v. First Natl. Bank, 61 S. W., 146.

*Owsley & Owsley*, and *R. T. Wilkinson*, for defendant in error.— Wedgeworth, the real party at interest, acquired the note in this cause in bad faith, and he cannot reap an advantage by maintaining this suit in Pope's name. Van Winkle v. Bank, 89 Texas, 147; Loan Co. v. Sperling, 103 S. W., 232; Knight v. Booth, 35 Texas, 11.

The facts in this case show that Wright and Beauchamp conspired together to perpetrate a fraud, and the note sued on was fraudulently executed and put in circulation for that purpose, and that Maxwell, Stephens and Wedgeworth and Pope all acted in bad faith in carrying out the purpose of the conspiracy and Pope cannot recover herein. Peoples Bank v. Mulkey, 61 S. W., 528; Davis v. Grey, 61 Texas, 506.

Maxwell, Stephens, Wedgeworth and Pope all took the note herein sued upon subject to the statutory notice by *lis pendens* of Ruthford's interest in the land. Dodd v. Lee, 57 Mo. App., 167; Wortham v. Boyd, 66 Texas, 401; Moran v. Wheeler, 87 Texas, 183; Steffian v. Bank, 69 Texas, 517; 27 Cyc., 455.

The note herein sued upon having been fraudently put in circulation the burden rests upon the plaintiff Pope to prove he and

Stephens under whom he claimed acquired the note in good faith for a valuable consideration. Peoples Bank v. Mulkey, 61 S. W., 528.

While *lis pendens* does not affect a purchaser of negotiable instruments before maturity so far as the debt is concerned, it will affect the title to land taken as security; and a person can convey no greater title to land than he owns, nor can a lien or mortgage on land carry greater title than a deed to the land; consequently where a person sells land and retains a lien to secure the purchase money notes and such purchase money notes are transferred with the lien on the land taken to secure them, the purchaser of the notes so far as the debt is concerned, would not be affected by the pendency of a suit to cancel the notes; however he would be affected where there had been a suit filed by a third person not a party to the notes to recover the land. Rev. Stats, 1911, arts. 6837, 6838, 6839, 6840; 13 Am. & Eng. Ency. of Law, 70; Dodd v. Lee, 57 Mo., 167; Wortham v. Boyd, 66 Texas, 401; Manser, Etc., Imp. Co. v. Beer, 45 S. W., 972; Oil Co. v. Hayden, 135 S. W., 1149.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

We have concluded, on a careful re-examination of this record, that there was error in our order affirming the judgment of the District Court.

The recommendation of the Commission of Appeals on which our judgment was entered was based on the following conclusions: first: that the transferees of Beauchamp's negotiable note, under Wright, were in substance mortgagees of the land; and, second, that Rutherford's compliance with section 1, chapter 128, Act of 1905, p. 316, now article 6837 of the Revised Statutes, prevented such transferees from acquiring any better right than that of Wright with respect to the enforcement of a vendor's lien against the land originally owned by Rutherford, though one or more of such transferees acquired the note, before maturity, for value, and without actual notice of any infirmity in the note or lien. 206 S. W., 928.

There is no doubt that the conclusion is correct that the transferee of a vendor's lien note becomes a mortgagee or encumbrancer of the land, but we do not think it follows, that one who takes a transfer of a vendor's lien note, in good faith, for value, and before the note's maturity, may be charged with constructive notice of a vice in the vendor's lien by means of section 1 of the Act of 1905. Prior to the enactment of the Act, it was plainly the law in Texas that the doctrine, whereby a purchaser *pendente lite* was bound by a judgment against the party under whom he claimed, had no application to negotiable paper.

An emphatic announcement of the law is contained in that portion of the opinion in Board v. T. & P. Ry. Co., 46 Texas, 328, which

reads: "And there is not even one solitary exception to the universally recognized rule that negotiable instruments are not within the rule of *lis pendens.*" Again in Gannon v. Bank, 83 Texas, 276, 188 S. W., 574, it is said: "The only fact under the evidence that appellants rely upon as creating and charging appellee with notice of such prior encumbrance is the pendency of the Butler suit. The note is negotiable in form. It is a recognized rule of law that negotiable instruments are not within the rule of *lis pendens.* The pendency of the Butler suit did not charge appellee with notice of any defense to the note."

In 2 Pomeroy's Equity Jurisprudence, section 36, the following statement is made: "It is well settled that the doctrine of constructive notice from *lis pendens* does not embrace suits concerning negotiable instruments or moneys, so as to affect the title of a transferee for value and in good faith during the pendency of the action, even when the transfer was made in direct violation of an injunction, so that the endorser or assignor would be punishable for the contempt."

So, it is held that the way to effectively prevent the circulation of negotiable instruments, *pendente lite,* is for the court to require same to be actually delivered into the custody of the court. Kieffer v. Ehler, 18 Penn. St., 391.

The Supreme Court of Ohio tersely expressed the fundamental reason for refusing to apply the doctrine of *lis pendens* to negotiable paper, in saying: "The doctrine of *lis pendens* is founded on no principle of natural equity, but has its foundation solely in considerations of public policy; and the policy which excepts negotiable paper from its operation, is at least, as wise, as important, and as well established as is that on which the rule itself has its foundation." Stone v. Elliott, 11 Ohio St., 260.

We are further of the opinion that the protection which the law gives the *bona fide* holder of negotiable paper extends to a lien which is a mere incident of the debt evidenced by the paper, in the absence of actual or constructive notice of some defect in the lien. The *bona fide* purchaser has the same right to rely on an incidental and inseparable lien as on any other feature of a negotiable note. Hamblen v. Folts, 70 Texas, 135, 7 S. W., 834. We therefore regard as thoroughly sound the declaration of the Supreme Court of Missouri, in Mayes v. Robinson, 93 Mo., 114, 5 S. W., 611, that: "If the defendant took the note discharged of any equities to which it was subject in the hands of the payee, the deed of trust passed to him discharged of such equities to the same extent. Logan v. Smith, 62 Mo., 455. The deed of trust, being incident to the note, partook of the negotiability of its principal. Hagerman v. Sutton, 91 Mo., 519, 4 S. W., 73, and authorities cited. If the defendant was a *bona fide* holder of the

note, for value, before maturity, without notice, he was in equal measure such *bona fide* holder of the deed of trust.''

In rejecting the contention, that defenses should be available against a mortgage lien which were not available against the debt secured by such lien, the Supreme Court of the United States declared that the following conclusions were sustained by reason, principle and the greatest weight of authority:

''The assignment of a note underdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was non-negotiable, or had been assigned after maturity. The question presented for our determination is, whether an assignee, under the circumstances of this case, takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative. The contract as regards the note was that the maker should pay it at maturity to any *bona fide* indorsee, without reference to any defenses to which it might have been liable in the hands of the payee. The mortgage was conditioned to secure the fulfillment of that contract. To let in such a defense against such a holder would be a clear departure from the agreement of the mortgager and mortgagee, to which the assignee subsequently, in good faith, became a party. If the mortgagor desired to reserve such an advantage, he should have given a non-negotiable instrument. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who 'puts trust and confidence in the deceiver should be a loser rather than a stranger.' . . .''

''The mortgaged premises are pledged as security for the debt. In proportion as a remedy is denied the contract is violated, and the rights of the assignee are set at naught. In other words, the mortgage ceases to be security for a part or the whole of the debt, its express provisions to the contrary notwithstanding.''

''The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the latter is alone a nullity. . . .''

''All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy, which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt

which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action, where no such relation or dependence exists. . . ."

"The principle is distinctly recognized that the measure of liability upon the instrument secured is the measure of liability chargeable upon the security."

Carpenter v. Longan, 16 Wall, 271 to 277, 21 L. Ed., 313.

In line with the reasoning of the Supreme Court of the United States, is the opinion of this Court in the case of Perkins v. Sterne, 23 Texas, 563, 76 Am. Dec., 72, wherein it is said: "It is well settled, that the assignment of the debt, even by parol, draws after it the mortgage as appurtenant to the debt. 4 Kent, 161, 162. Even in the case of a note made payable to A., or bearer, and transferable by delivery, without indorsement, any holder of such note could avail himself of the security afforded by a mortgage executed to secure its payment, because the mortgage, as an incident, would follow the note into the hands of every holder. So, on the other hand, 'an assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered to be without meaning or use.' 4 Kent. And the reason is, that the principal thing always draws to it that which is accessory or incidental; so that the principal thing cannot take one direction and that which is incident to it, another direction."

Bigelow on Bills, Notes and Checks, on page 196, recognizes the correctness of these decisions in saying: "The executed contract of mortgage, assuring an instrument of the law merchant, stands upon a footing of its own. It is an incident of the instrument assured; and if that is negotiable and is transferred according to the law merchant, the mortgage passes with it, *ipso facto*, without assignment in words, and, by the weight of authority, with the properties of the principal instrument itself. *Equities therefore cut off by negotiation of the latter to a holder in due course are cut off as well in respect of the mortgage.*"

We find nothing in the Act of 1905 to evidence an intent to enlarge the scope of *lis pendens*, so as to thereby affect the *bona fide* purchaser of negotiable paper. The Act can be given no other effect than as preventing the operation of *lis pendens* in any suit or action of the character mentioned where a transfer or encumbrance is executed by a party to the suit to a third party for a valuable consideration, without notice, unless the notice prescribed by article 6837 has been filed. By its terms the act in no wise purports to extend the effect of notice of any pending suit or action but does impose a limitation on the prevailing common law doctrine.

However, there can be no doubt of the legislative purpose to restrict and not to extend the binding force of judgments on those acquiring rights *pendente lite* in good faith and for value and without

actual notice, in the light of the history of statutes of the class to which our statute belongs. For similar statutes in both England and many American States have been uniformly enacted to ameliorate the supposed harshness of the doctrine of *lis pendens* as applied to purchasers in good faith, for value, and without knowledge.  2 Pomeroy's Equity Jurisprudence, sections 639, 640.  Pennington v. Martin, 146 Ind., 635, 45 N. E., 1112;  Wood v. Price, 79 N. J. Law, 620, 81 Atl., 983, 38 L. R. A. (N. S.), 773, Ann. Cases, 1913A, 1210. Such a statute, wholly  intended to benefit the *bona fide* purchaser, cannot be held to operate to his sore detriment, by making available against him defenses which could not be asserted without the aid of the statute.

Nothing we have said prevents an encumbrancer from being chargeable with matters, of which the law does require him to take notice.  We simply hold that independent of the Act of 1905 the rule of *lis pendens* would not affect the right to the debt or lien of the *bona fide* purchaser of a negotiable note and further that this Act cannot properly be so construed as to affect the right of such a purchaser.  Save for the ''Lis Pendens Record,'' there was nothing in the public records to indicate any vice in Beauchamp's note or in the incidental vendor's lien.

Having determined that a *bona fide* purchaser of Beauchamp's note would have the right to enforce the vendor's lien, it becomes necessary for us to dispose of the contentions of the parties relative to alleged errors of the trial court and of the Court of Civil Appeals with respect to the submission and determination of the issues arising under the law applicable to a *bona fide* purchaser.

The writ of error was granted to plaintiff in error because the Court of Civil Appeals, after making findings indicating that Mrs. Stephens paid value for the note, held that she should not be treated as a *bona-fide* purchaser because, there being evidence that the note originated in fraud, she introduced no testimony to show that she acquired the note in good faith.  The plaintiff in error insists that he was entitled to judgment for the full amount of Beauchamp's note, as the assignee of Mrs. Stephens, because it conclusively appears that she paid value for the note, before maturity, and because the record contains no evidence to carry notice to her of the fraud by which the notes were acquired.

Mrs. Stephens does appear to have acquired the note before maturity and the record is barren of facts to charge her with notice of the fraud perpetrated on Rutherford, and if the record did conclusively show that she paid value, the contention of plaintiff in error would be sustained, under the rule established in Prouty v. Musquiz, 94 Texas, 93, 58 S. W., 721, 996, that where the holder of a promissory note procured by fraud establishes that a previous assignee paid value for the note, before maturity, and there is nothing tending

to show bad faith in the assignment, then the burden is upon one seeking to defeat the enforcement of the note for fraud in its origin, to show notice of the fraud.

However, we find that under the evidence, which we have carefully considered and deem it unnecessary to discuss, it was a question of fact for the jury as to whether Mrs. Stephens paid value for the note. Hence, we cannot say that the jury were not authorized to find that Mrs. Stephens was not an innocent purchaser.

We also granted a writ of error on the application of defendant in error Rutherford, who complains that the evidence did not warrant the conclusion of the Court of Civil Appeals that the uncontradicted evidence showed that plaintiff in error was a *bona fide* holder of Beauchamp's note and as such entitled to recover the amount loaned thereon, with interest.

Bearing in mind the rule clearly enunciated by this Court, speaking through Judge Brown, in the case of Houston E. & W. T. Ry. Co. v. Runnels, 92 Texas, 307, 47 S. W., 972, that ''it is the province of the jury to pass upon the credibility of the witnesses' and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable,'' we have concluded that it was a question of fact, for the jury to determine, as to whether plaintiff in error was a *bona fide* holder of the note. See also Pridgen v. Walker, 40 Texas, 136; Crosby v. Church, 99 S. W., 587; Burleson v. Tinnin, 100 S. W., 351; First Natl. Bank of Ft. Wayne v. Howard, 174 S. W., 720.

The above conclusions would lead to an affirmance of the judgment of the District Court, following the practice indicated in the case of Beck v. Texas Co., 105 Texas, 303, 148 S. W., 295, under the jury's findings in favor of defendant in error Rutherford, on the issues submitted to them as to the *status* of Mrs. Stephens and of plaintiff in error as innocent purchasers, were it not for the fact that the charge of the trial court presents harmful error against plaintiff in error, of which proper complaint has been made.

Notwithstanding the only relief sought by plaintiff in error against defendant in error Rutherford was a foreclosure of the vendor's lien, the trial court charged the jury that no foreclosure could be had if the jury found that there was no valid lien on the land in El Paso County to secure the two notes for $5980 each, which were given Rutherford for the conveyance of his land, and if the jury found that said two notes were fraudulent and void. This charge is manifestly erroneous. The subsequent portions of the charge authorizing a finding for plaintiff in error if he or Mrs. Stephens was found to be an innocent purchaser did not correct the above error.

They simply made the different parts of the charge contradictory. Missouri, K. & T. Ry. Co. v. Rodgers, 89 Texas, 680, 36 S. W., 243.

It is ordered that the judgment heretofore entered herein by this Court be set aside and that the judgments of the District Court and of the Court of Civil Appeals be reversed and that this cause be remanded to the District Court for a new trial.

*Reversed and remanded.*