**WALKER v. DAWLEY et al.   (No. 11840.)**

Court of Civil Appeals of Texas.   Fort Worth.
Dec. 17, 1928.

Rehearing Denied Feb. 25, 1928.

1. **Mines and minerals $\Longleftrightarrow$74—In action because of alleged fraud in sale of oil lease, instruction requiring showing of fraud to jury's "satisfaction" held erroneous.**

In action by trustee of oil company for company's share in proceeds of sale of oil lease alleged to have been made as result of conspiracy to defraud company, instruction that burden was on plaintiff to prove fraud to "satisfaction" of the jury *held* erroneous and not cured by language in same instruction which placed burden on plaintiff to make out case by preponderance of evidence.

2. **Trial $\Longleftrightarrow$139(1)—In jury trial, determination of issue supported by any evidence beyond scintilla is for jury.**

It is general rule applicable to trials by jury that, if there is any evidence beyond mere scintilla of proof which reasonably tends to support affirmative or negative of an issue of fact, determination of that issue must be left to jury.

3. **Fraud $\Longleftrightarrow$52—In jury trial involving issue of fraud, all testimony having reasonable bearing thereon may be considered.**

In trial by jury, if issue of fraud is involved, all testimony having any reasonable bearing on that issue is admissible, and may be considered by jury in reaching verdict.

4. **Trial $\Longleftrightarrow$140(2)—If testimony bearing on issue comes from interested source, ordinarily issue must be submitted to jury.**

In trial by jury, if testimony bearing on issue comes from interested source, ordinarily issue must be submitted to jury, even though it be uncontradicted, and controlling if believed to be true.

5. **Appeal and error $\Longleftrightarrow$927(7)—In testing correctness of peremptory instruction for defendant, evidence most favorable to plaintiff must be considered to exclusion of contrary evidence.**

In testing correctness of peremptory instruction in favor of defendant, rule is that evidence most favorable to plaintiff as against him must be considered to exclusion of all evidence to contrary.

6. **Appeal and error $\Longleftrightarrow$1031(6)—In determining whether error in requiring plaintiff to prove fraud to satisfaction of jury worked injury, evidence most favorable to plaintiff must be considered to exclusion of contrary evidence.**

In determining whether or not error in requiring plaintiff to prove fraud to satisfaction of jury was reasonably calculated to work injury to plaintiff, evidence most favorable to plaintiff as against defendants must be considered to exclusion of all evidence to contrary.

7. **Appeal and error $\Longleftrightarrow$1032(3)—Reversal of judgment follows giving of erroneous instruction, unless it clearly appears that no prejudice resulted to losing party.**

When erroneous instruction is given, the reversal of judgment must follow, unless it clearly appears that no prejudice resulted to losing party by reason thereof.

8. **Conspiracy $\Longleftrightarrow$21—Evidence held to warrant submission of question of vice president's participation in conspiracy to defraud to jury, in action for company's share in proceeds of sale of oil lease.**

In action by trustee of oil company to recover money company was alleged to have been defrauded of by conspiracy resulting in sale of oil lease in which it was interested, evidence *held* sufficient to warrant submission of question of fraud on part of vice president of company to jury.

On Motion for Rehearing.

9. **Appeal and error $\Longleftrightarrow$745—Instructed verdict for defendant, presenting fundamental error, may be considered on appeal, in absence of assignment being filed below if apparent on face of record.**

Where on appeal plaintiff presented instructed verdict in favor of defendant as fundamental error without assignment of error to that effect being first filed in trial court and evidence pointed to sustain it, *held* that it need not be assigned, but should be considered if it is apparent on face of record.

10. **Appeal and error $\Longleftrightarrow$748(1)—Rules governing procedure being for convenience, Court of Civil Appeals may consider assignments of error, though not presented in accordance therewith.**

Rules governing procedures in Court of Civil Appeals being made for convenience of those courts in order to facilitate their labors and to end that right of appeal be not abridged, they may consider assignments of error, even though not presented in accordance with rules.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by A. G. Walker, trustee for the Marigold Oil & Refining Company, against George W. Dawley and others. Suit dismissed as to all the defendants except George W. Dawley, E. D. Davenport, H. L. Hunter, and R. W. Tolbert. From a judgment for the named defendants, plaintiff appeals. Reversed and remanded.

---

$\Longleftrightarrow$For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Bullington, Boone, Humphrey & King, and W. B. Chauncey, all of Wichita Falls, for appellant.

Kay, Akin & Smedley and O. E. Nelson, all of Wichita Falls, and Wm. J. Dawley, of New York City, for appellees.

DUNKLIN, J.  This is the second appeal in this case, both appeals having been prosecuted by plaintiff, from judgments in favor of the defendants.  The disposition of the former appeal is shown in Stevens v. Dawley et al., 254 S. W. 810, in an opinion written by Chief Justice Hall of the Amarillo Court of Civil Appeals.  The pleadings of the parties and issues of fact set out in that opinion were substantially the same in both trials, and therefore will not be repeated here, save and except that the plaintiff in the last trial was A. G. Walker, substitute trustee for the Marigold Oil & Refining Company, in place of M. E. Stevens, the former trustee and former plaintiff in the case.

The relief sought by plaintiff was the recovery of a portion of the proceeds of the sale of a certain oil and gas lease on four acres of land in Wichita county, evidenced by a contract and a deed of assignment executed by George W. Dawley to the Brinkley Producing & Refining Company of New York City.  As shown in the opinion on the former appeal, at the time of the execution of the instruments therein shown, title to the lease was owned as follows:  Joseph and M. O. Danciger, three-eighths;  the Marigold Oil & Refining Company, nine thirty-seconds;  E. D. Davenport, three thirty-seconds;  J. P. Bartley and the Kansas & Gulf Company, one-eighth—the lease being subject to a royalty interest of one-eighth of all the oil in favor of the lessor who owned the fee-simple title to the land covered by the lease.

The contracts appearing in the former appeal were introduced in evidence on the last trial, together with others, including an instrument executed by E. D. Davenport and M. O. Danciger and by Stanley Watson acting in behalf of George W. Dawley purporting to be an assignment of the same lease by E. D. Davenport and M. O. Danciger to Stanley Watson for the benefit of George W. Dawley for a consideration of $300,000, payable as follows:  $25,000 cash;  $75,000 October 1, 1919;  $75,000 November 1, 1919;  $75,000 December 1, 1919;  and $50,000 January 1, 1919 (evidently 1920).  That instrument was dated September 11, 1919.

George W. Dawley's contract to sell the lease to the Brinkley Producing & Refining Company, noted above, was dated September 10, 1919, and the consideration to be paid therefor was $650,000, payable as follows:  $30,000 cash;  $150,000 in capital stock in the assignee corporation;  $80,000 October 1, 1919;  $85,000 November 1, 1919;  $90,000 December 1, 1919;  $100,000 January 1, 1920;

$115,000 February 1, 1920.  His deed of assignment to that corporation in fulfillment of that agreement was dated September 15, 1919.

In plaintiff's amended petition on which he went to trial, the following were named as defendants, to wit:  George W. Dawley, E. D. Davenport, H. L. Hunter, M. O. Danciger, J. O. Danciger, R. W. Tolbert, Stanley Watson, J. M. Reynolds, and W. J. Dawley.  But the suit was dismissed as to all the defendants except George W. Dawley, E. D. Davenport, H. L. Hunter, and R. W. Tolbert.

For cause of action, plaintiff alleged, in substance, that a conspiracy was entered into by all the defendants to cheat and defraud the Marigold Oil & Refining Company, in pursuance of which all the foregoing instruments were executed.  According to allegations in the petition, the three instruments executed, in favor of George W. Dawley were fictitious and were resorted to for the fraudulent purpose of cheating the Marigold Oil & Refining Company by making it appear that the interest of that company in the lease had been in fact sold on a basis of $300,000 for the entire interest in the lease and with the intention then and there to sell the interest of that company on a basis of $650,000 for the whole, and to wrongfully appropriate the difference in those prices to their own use and benefit.  According to further allegations, that fraudulent purpose and scheme was accomplished by the sale of the lease to the Brinkley Producing & Refining Company through George W. Dawley, who then held the legal title thereto, and by a division among the defendants of the Marigold Oil & Refining Company's pro rata part of the difference between $300,000 and $650,000.

The trial was before a jury, and the following are the special issues with instructions submitted to them with their findings thereon, to wit:

"(1) A 'conspiracy' is an agreement or understanding between two or more parties with the mututal assent and understanding of all, for the purpose of doing some injury to another, and in this case the conspiracy charged is an agreement or understanding which the plaintiff alleges the defendants entered into for the purpose of taking certain moneys belonging to the Marigold Oil & Refining Company and converting it to the use and benefit of the defendants.

"(2) A 'fraud,' as that term is used herein, denotes any act, omission, or concealment which involves a breach of legal duty, trust, or confidence justly imposed, and which is injurious to another, or by which an undue and unconscientious advantage is taken of another.  It may be inferred or shown by the facts and circumstances and the nature of the transaction or transactions shown, the relation of the parties, and all the evidence before you.  It cannot under any circumstances be presumed against a party, for all men are presumed to act in good faith until the contrary appears, and he who charges fraud must prove its existence by legal and competent evidence to the satisfaction of

the jury. It may be established by circumstantial evidence, as well as by direct and positive proof.

"(3) In all cases where fraud and conspiracy is charged against two or more persons, in order to sustain such charge, the jury must believe from the evidence that both or all of such parties were involved in it; acts indicating fraud in only one of them would not bind the others unless the evidence shows that such others knew of and participated in them or that they were done with the purpose of carrying out or effecting a common purpose or design, between the parties, and that such purpose or design resulted in damage to the plaintiff. You are charged that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence the affirmative of each of the above special issues, and, if plaintiff has failed to do so as to any of said issues, then your answer should be in the negative, as to such issue or issues.

"Special issue No. 1: Did any or all of the defendants George W. Dawley, E. D. Davenport, and R. W. Tolbert enter into a conspiracy to defraud the Marigold Oil & Refining Company of Texas out of any money? Answer: No."

"Special issue No. 4: Did the defendant E. D. Davenport receive and appropriate to his own use any money which did not belong to him and which was rightfully the property of the plaintiff, Marigold Oil & Refining Company? Answer: No."

"Special issue No. 6: Did the defendant George W. Dawley receive and appropriate to his own use any money which did not rightfully belong to him and was the property of the plaintiff, Marigold Oil & Refining Company? Answer: No."

"Special Issue No. 8. Did R. W. Tolbert receive and appropriate to his own use any money which was not rightfully his, and was the property of the Marigold Oil & Refining Company? Answer: No."

And in obedience to a peremptory instruction, the jury further found:

"We, the jury, find in favor of the defendant H. L. Hunter."

Upon that verdict judgment was rendered in favor of the defendants George W. Dawley, E. D. Davenport, R. W. Tolbert, and H L. Hunter, and plaintiff has appealed.

Appellant seeks a reversal of the judgment on two propositions of law only, which are as follows:

"(1) The issue involved in this case being the issue of fraud, the trial court erred in instructing the jury that the plaintiff who charged fraud on the part of the defendants must prove its existence by legal and competent evidence to the satisfaction of the jury, in that it imposed upon the plaintiff a burden more onerous than the law warrants and required of the plaintiff more than a preponderance of the evidence to entitle him to recover.

"(2) The court erred in instructing the jury to return a verdict in favor of the defendant H. L. Hunter in this cause, for the reasons that the record shows that he was an officer of the Marigold Oil & Refining Company of Texas, and participated in the division of the 'side money' or commissions belonging to the Marigold Oil

4 S.W.(2d)—11

& Refining Company of Texas, and no one testified or gave any explanation of his act or conduct or the receipt of said money, save and except the defendants themselves, and therefore the credibility of said defendants and the question of the good faith of H. L. Hunter should have been left to the determination of the jury."

[1] We have reached the conclusion that the trial court erred in the instruction given to the effect that the burden was upon plaintiff to prove the fraud alleged to the *satisfaction* of the jury. Nor do we believe that the error was cured by the language used in other portions of the same instruction read in connection with the further instruction which placed the burden of proof upon plaintiff to make out his case by a preponderance of the evidence. Baines v. Ullmann, 71 Tex. 529, 9 S. W. 543; Willis v. Chowning, 90 Tex. 617, 40 S. W. 395, 59 Am. St. Rep. 842; Moore v. Stone (Tex. Civ. App.) 36 S. W. 910; Carl v. Settegast (Tex. Com. App.) 237 S. W. 238.

[2-4] It is also a general rule, applicable to trials by jury, that, if there is any evidence beyond a mere scintilla of proof which reasonably tends to support the affirmative or negative of an issue of fact, the determination of that issue must be left to the jury. And, if the issue of fraud is involved, all testimony having any reasonable bearing upon that issue is admitted, and may be considered by the jury in reaching a verdict. Sonnentheil v. Christian, Moerlein Brew. Co., 172 U. S. 410, 19 S. Ct. 233, 43 L. Ed. 492. And, if the testimony bearing upon an issue comes from an interested source, ordinarily the issue must be submitted to the jury, even though it be uncontradicted and controlling, if believed to be true. Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447, and decisions there cited.

At the outset, it is proper to note that it appears from the record that all other parties interested in the lease ratified the sale made by George W. Dawley to the Brinkley Producing & Refining Company, and the contract between Davenport and Dawley, dated August 30, 1919, and received their pro rata portions of the proceeds of the sale. But the rights of plaintiff in this suit cannot be affected by that fact.

The statement of facts found in the record before us covers some 438 pages. It has been burdensome upon the court to examine the same sufficiently to determine the merits of the two errors assigned, since briefs filed by the parties, although replete with conclusions stated as to the facts proven, make scant references to the pages of the statement of facts, and often fail to give the names of the witnesses in mind.

[5-7] In testing the correctness of the peremptory instruction in favor of defendant Hunter, the rule is that the evidence most favorable to plaintiff, as against him, must be considered to the exclusion of all evidence

to the contrary. And we believe that substantially the same test is applicable in determining whether or not the error in requiring plaintiff to prove the fraud alleged as against the other defendants was reasonably calculated to work injury to the plaintiff. It is also the rule that, when an erroneous instruction is given, then a reversal of the judgment must follow, unless it clearly appears that no prejudice resulted to the losing party by reason thereof. Lamar v. P. & S. F. Ry. Co. (Tex. Com. App.) 248 S. W. 34; Osceola Oil Co. v. Stewart Drilling Co. (Tex. Com. App.) 258 S. W. 806.

If it was the understanding and purpose of Davenport and Dawley, in executing the contract referred to, of date August 30, 1919, that that instrument, together with the letter from Davenport to Dawley, written contemporaneously with the contract, was to empower Dawley to sell the property therein described, and with the understanding that Dawley should not be bound by his obligation to purchase and pay for the property himself according to the terms of the contract, in the event he did not effect a sale thereof to other persons, and if that contract was entered into for the purpose of defrauding the Marigold & Refining Company out of any of the proceeds of sale of its interest in the lease by Dawley, and if the sale was made in pursuance of that understanding and purpose, and Dawley appropriated the amount he received in excess of the $360,000, then plaintiff had a right to recover the Marigold Oil & Refining Company's pro rata part of such excess proceeds of the sale; and the parties against whom plaintiff would be entitled to a recovery for such sums would be the defendant Dawley and such other of the defendants as participated in the making of the said contract with knowledge of such fraudulent intent, independently of the further question as to whether or not the fruits of such fraud were shared by all the defendants or were appropriated by some one or more of them to the exclusion of the others.

[8] While those facts were not specifically averred in plaintiff's petition, yet they were necessarily involved in plaintiff's allegations of fraud, which, as against a general demurrer, were sufficient to present them. And we have reached the conclusion that the evidence was sufficient to warrant a submission of those issues in proper form, and to sustain a recovery upon findings of the jury thereon in favor of the plaintiff.

In the absence of some reasonable explanation of why the contract between Davenport and Dawley, of date August 30, 1919, did not stipulate $360,000 as the price to be paid for the property by Dawley instead of $400,000, the inference might be indulged that Davenport's agreement, made contemporaneously therewith in his letter to Dawley, to pay him 10 per cent. commission, or $40,000 of the

$400,000 which Dawley was to pay for the property, was understood and intended to be a contract to pay Dawley that sum as a commission for negotiating a sale to other persons rather than a rebate to Dawley for the price he himself was to pay for the property.

According to Dawley's own testimony, the property was first presented to him by Stanley Watson, a broker employed by Davenport to find a purchaser, and, after discussing the same with Watson and also with defendant H. L. Hunter, vice president of the Marigold Oil & Refining Company, he went to Wichita Falls, where he met Davenport for the first time, having never known him prior thereto, and then and there closed the contract of date August 30, 1919, without giving any security to insure the performance of his obligations therein stipulated; and Davenport testified that he made no investigation of Dawley's financial responsibility. According to Dawley's further testimony, it was understood between him and Davenport at the time that, in the event he (Dawley) should default in the payment of any of the installments mentioned in his contract, the contract was to be terminated. He also testified to the effect that he was solvent at that time, but that all the property he then owned did not aggregate in value more than $15,000, part of which was in capital stock in corporations. While the contract just mentioned was placed in escrow to be delivered upon the payment of the sums therein specified, there was an absence of any testimony to show how long it was to remain in escrow awaiting Dawley's compliance therewith. Dawley never at any time paid out of his own funds any sum of money in the discharge of his purported contract to purchase. $360,000 was finally realized by Davenport for the sale of the property, but all of that came out of money paid by the Brinkley Producing & Refining Company on its contract of purchase from Dawley. That contract, together with Dawley's contract, were both placed in escrow in the City National Bank of Wichita Falls, and by agreement between Dawley and Davenport the sums paid by the Brinkley Company, over and above the installments stipulated in Dawley's contract with Davenport, were checked out by Davenport and turned over to Dawley, including $7,500 out of the first payment of $30,000 made by the Brinkley Company, notwithstanding the fact that an agreement between Davenport and Dawley was filed with the bank as an instruction to it that all of those funds should be held by the bank in trust to meet Dawley's obligation to Davenport. On January 19, 1920, Davenport had paid over to Dawley out of the funds so collected more than $68,000, and on that date the Brinkley Company had paid a total of $310,-000. Dawley then agreed with that Brinkley Company that it might meet the balance of its installments out of the oil runs from the lease,

and that agreement was acquiesced in by Davenport, who also agreed that he would likewise wait for further payments on Dawley's contract to be satisfied in the same way. Those agreements were carried out, and Davenport did not receive final payment for the lease until November 12, 1920.

Although Dawley paid nothing to Davenport on his contract, he realized in cash and equivalent thereto through the sale to the Brinkley Company over and above the consideration which his contract purported to fix, $140,000 in money and $150,000 capital stock in the Brinkley Company. Out of the money realized, he agreed to pay Stanley Watson a commission for his services in negotiating the sale to him (Dawley) $15,000, and has paid $11,000 of that sum, because Watson told him that he would not be paid a commission by Davenport. Davenport also paid Watson out of the funds realized from the sale of the property the sum of $60,000 as a commission for negotiating the sale to Dawley. According to Dawley's testimony, the instrument in writing, noted above, purporting to be a contract of sale by Davenport and M. O. Danciger to Watson as agent for Dawley for a total consideration of $300,000, dated September 11, 1919, was executed without his knowledge or consent, and he had never heard of it until it was offered in evidence in one of the trials of this cause. Davenport testified, in effect, that he had authorized Watson to sell the property for a net price of $300,000, and that that instrument was executed in order that it might conform to the showing he entered on the books of the Marigold Oil & Refining Company that the property sold for a net sum of $300,000; that defendant Tolbert was a partner of Watson in handling the transaction, and the dealings by him with Watson, noted above, were with him as a representative of that firm.

Some of the checks which were given by Davenport to Dawley upon the bank for money paid by the Brinkley Company on its contract of purchase carried the notation of the word "commission" on their faces. Out of the funds collected by Davenport from the sale of the property, as above shown, Davenport also paid to the defendant H. L. Hunter the sum of $1,500.

Davenport testified that he received $20,000 of the commission of $60,000 he paid Watson and Tolbert, and that Watson and Tolbert divided the balance of $40,000 equally between them. The $20,000 Davenport received was appropriated to his own use.

In view of the facts and circumstances so recited, together with other circumstances shown in the record which we shall not attempt to refer to, and for the reasons noted, the judgment of the trial court is reversed as to all of the appellees, and the cause is remanded for another trial as between plaintiff and them. The judgment of dismissal of plaintiff's cause as to the other defendants will not be disturbed; no complaint thereof being made.

### On Motion for Rehearing.

Appellee Dawley insists that the instruction given by the trial court in the third paragraph of his charge to the jury, to the effect that the burden of proof was upon plaintiff to establish by a preponderance of the evidence the affirmative of the issues submitted, should be construed as a qualification of the instruction given in the second paragraph of the charge, to the effect that one who charges fraud must prove its existence by legal and competent evidence to the satisfaction of the jury, and that therefore this court erred in holding, as a cause for reversal, the instruction last referred to. Appellee stresses the decision of Carl v. Settegast (Tex. Com. App.) 237 S. W. 238, as supporting that contention. After further consideration, we adhere to our former ruling upon that question. In the first place, the two instructions were in separate and distinct paragraphs, neither of which specifically referred to the other. The instruction in paragraph 2 clearly states that the fraud must be proven to the satisfaction of the jury, and if, as contended by appellee, the instruction noted in the third paragraph of the charge is to be construed as meaning that plaintiff was required to prove the affirmative of the issue by a preponderance of the evidence only, then that instruction is clearly in conflict with the one in paragraph 2. In S. K. Ry. Co. v. Sage, 98 Tex. 438, 84 S. W. 814, the judgment of the trial court was reversed, and one of the grounds for reversal was conflicting instructions that had been given to the jury, one of which was correct and the other erroneous. The court, in disposing of that question, said: "Which of the conflicting charges was followed we cannot tell." In addition to the authorities cited in the original opinion, it was held in the following cases that an error committed upon the trial of a case is presumed to be harmful and a reversal must follow, unless it appears from the record that it worked no injury to the complaining party. Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Wichita Valley Ry. Co. v. Williams (Tex. Com. App.) 288 S. W. 428; Eastland Co. v. Davisson (Tex. Com. App.) 298 S. W. 268; and other decisions cited in those cases.

As shown in the original opinion, we stated that, in the absence of some reasonable explanation of why the written contract between Davenport and Dawley, dated August 30, 1919, did not stipulate $360,000 as the price to be paid for the property by Dawley instead of $400,000, the inference might be indulged that Davenport's agreement, made contemporaneously therewith in his letter to Dawley, to pay him 10 per cent. rebate, or $40,000 of the $400,000 which Dawley was to

pay for the property, was understood and intended to be a contract to pay Dawley that sum as a commission for negotiating a sale to other persons rather than a rebate to Dawley for the price he himself was to pay for the property. Appellee Dawley had construed that statement as a finding of fact by this court that there was no satisfactory explanation with respect to the matter therein stated, and he has cited testimony at great length to prove that a satisfactory explanation was in fact proven. It did not occur to us that that interpretation would be placed upon the language used, as we thought it clearly appeared that we were merely citing evidence introduced upon the trial from which the jury might find in plaintiff's favor if they had been told that they could do so upon a preponderance of the evidence in support of that finding. Whether or not the explanation made was satisfactory would be a question for the jury, and, in view of some of the evidence, especially the fact that some of the checks given by Davenport to Dawley were marked on their face "commission," as pointed out in our original opinion, it could not be said and we did not intend to hold, and could not hold, that the explanation was satisfactory as a conclusion of law.

In a separate motion for rehearing filed by appellee H. L. Hunter, the point is made that we were in error in stating in our original opinion that Dawley testified that, after the property was first presented to him by Stanley Watson, the broker employed by Davenport to find a purchaser, he discussed the purchase of the property with H. L. Hunter, vice president of the Marigold Oil Company, before he went to Wichita Falls to meet Davenport for the first time. Upon further consideration we find that that statement is not borne out by the record, and it is accordingly withdrawn. However, the statement was not given controlling effect in our conclusion that the judgment should be reversed as to Hunter as well as to the other appellees, since there were other facts and circumstances in evidence which reasonably tended to support the charge made in plaintiff's petition, to the effect that appellee Hunter participated in the fraud alleged, if the same was committed.

[9] Appellee Hunter also makes a point that the error which appellant assigns as to the instructed verdict in his favor was presented as fundamental error in this court, in the absence of an assignment of error to that effect being the first filed in the trial court. It was also pointed out that following that assignment of error appellant did not clearly point out in the record the evidence to sustain

it, and it is insisted that by reason thereof this court was not authorized to consider the assignment. In Egan v. Lockney Farmers' Co-op. Society, 284 S. W. 937, by the Commission of Appeals, it was held, quoting from the syllabus, that:

"The erroneous giving of a peremptory charge is an error of sufficient importance to be classed as fundamental."

In Barkley v. Gibbs (Tex. Com. App.) 227 S. W. 1099, the following is said:

"As to fundamental error, it need not be assigned under the holdings in City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518, and Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242. It should be considered if it is apparent on the face of the record."

In the cited case of Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242, an assignment of error was presented for the first time to the Supreme Court without first being filed in the trial court was sustained because it presented fundamental error, and in that opinion Chief Justice Gaines said:

"Besides, both under the statute and under the rules, the court may consider errors 'apparent upon the face of the record.' Since every error must, in one sense, appear upon the face of the transcript, it is difficult to tell what is meant by this language; but we incline to think it intended to signify a prominent error, either fundamental in character or one determining a question upon which the very right of the case depends. Harris v. Petty, 66 Tex. 514 [1 S. W. 525]."

[10] It is a familiar holding that the rules governing procedures in Courts of Civil Appeals are made for the convenience of those courts in order to facilitate their labors, and, to the end that the right of appeal be not abridged, they may consider assignments of error even though not presented in accordance with the rules. C., R. I. & G. Ry. Co. v. Pemberton, 106 Tex. 463, 161 S. W. 2, 168 S. W. 126. Furthermore, our examination of the record in determining the merits of appellant's first assignment of error necessarily discloses the part taken in the transaction by H. L. Hunter as well as by the other appellees.

We will say further, with reference to both motions for rehearing, that there were other facts and circumstances in evidence not specifically pointed out in opinion on original hearing, which tended to support the allegations of fraud as against all the appellees.

The motions for rehearing referred to above are overruled.