**WEIDEL et al. v. HOFMANN et al.**

Nos. 10243, 10244.

Court of Civil Appeals of Texas.

Austin.

June 30, 1954.

Rehearing Denied July 21, 1954.

946

Eskridge, Groce & Hebdon, San Antonio, Coleman Gay, Austin, for appellants.

Moss & Moss, LaGrange, Massey, Hodges, Moore & Gates, Columbus, for appellees.

ARCHER, Chief Justice.

Appellees, as plaintiffs in the trial court, filed two suits, one against Frank Weidel et al. and one against Fred Weidel et al., and in each of said suits sought judgment for the title to an undivided 136649/151272 interest in and to a ½ royalty interest in certain lands in Fayette County, Texas, and also prayed for judgment removing cloud on said interest and quieting title thereto. The appellees alleged that the remaining undivided 14623/151272 interest in and to said ½ royalty interest was owned by the defendants other than the said Frank Weidel and Fred Weidel. Said defendants, other than the said Weidel brothers, answered in the suit and adopted the allegations of the appellees. Appellants, Frank and Fred Weidel, each filed a cross action in their respective suits for reformation of the royalty deed. Upon a trial before the court, without a jury, judgment was rendered for appellees as to the undivided 136649/151272 interest prayed for.

Both of the suits were tried together in the trial court and have been consolidated on this appeal and were briefed and argued as such in this Court, and we will decide the cases in one opinion.

The appeal is based on seven points, and are that even though Fred Weidel was an interested witness, having testified clearly and without contradiction to facts which would entitle appellants to reformation of the royalty deed, such testimony being corroborated by other circumstances, and there being no evidence to the contrary, the trial court was in error in rejecting and not accepting such testimony; that it was error to hold that there was no mistake of law or fact as between the parties as to the meaning of the provision of the royalty conveyance concerning termination thereof; that there was no ambiguity in such provision; in not finding that John A. Kerr, Sr., represented that the royalty contracts would expire on September 27, 1951 if there was no paying production; in not finding that the testimony of Fred Weidel made out a case for reformation; in holding that the cross actions are barred by the four-year statute of limitation; and in sustaining appellees' objections to the testimony of Fred Weidel concerning the negotiations relative to the execution of the oil and gas lease of October 27, 1951.

Appellees acquired their royalty interest through separate deeds from the said Frank

Weidel and Fred Weidel, each dated September 27, 1941, and each containing the following provision:

"It is further agreed and herein stipulated that in case there is no paying production on said land on the 27th of September, 1951, and for six months thereafter, that this grant shall become null and void, and the minerals hereby conveyed shall revert to the said grantor, his heirs and assigns, but should there be such production, then and in that event, this grant shall remain in full force and effect until such production ceases, after which this instrument shall become null and void."

The royalty interest of appellees is a nonparticipating interest, as the Weidels had retained the right to execute oil and gas leases and receive all bonuses and rentals therefrom. There was no lease in effect on September 27, 1951, but Fred and Frank Weidel executed a single lease to Hammon Oil & Refining Co., covering both of their respective tracts on October 27, 1951, and paying production was obtained on the premises by two wells, one on the Frank Weidel land completed on December 12, 1951, and one on the Fred Weidel land completed on January 12, 1952, and such production has continued in paying and commercial quantities from both wells since such dates.

The Weidels contend that the royalty interests conveyed by such deeds expired on September 27, 1951 for lack of production.

Appellees claim that the royalty interests did not expire on September 27, 1951; because production in paying quantities was obtained prior to six months after September 27, 1951 on each tract and has continued since that date.

The trial court made findings of facts and conclusions of law, and found that there was no mistake of law or of fact and that there was no ambiguity in the royalty deeds.

We believe that the trial court was correct in holding that there was no ambiguity in the royalty deeds and that each conveyed an undivided one half royalty interest for ten years and six months from September 27, 1941, and so long thereafter as paying production continued. It is admitted that paying production was obtained on December 12, 1951 on the Frank Weidel land and on January 12, 1952 on the Fred Weidel land, both within six months from September 27, 1951.

Frank Weidel executed a nonparticipating royalty deed to D. F. Johnson on September 27, 1941, and on the same date Fred Weidel executed a nonparticipating royalty deed to Dr. E. S. Park.

Each of the deeds contained the provision regarding termination which we have hereinabove set out.

On September 27, 1951 neither of the tracts of land was under an oil and gas lease; but on October 27, 1951 the Weidels jointly executed an oil and gas lease covering the lands to Hammon Oil & Refining Co., which was within the period of ten years and six months from September 27, 1941, and oil and gas were discovered on the dates herein set out in paying quantities and has continuously been produced therefrom. It is therefore apparent from the undisputed facts that the interests of appellees did not terminate on September 27, 1951 and are still in full force and effect.

In the case of Clark v. Holchak, Tex. Sup., 1953, 254 S.W.2d 101, opinion by Chief Justice Hickman, an identical provision as that above set forth was involved. There the term was fifteen years and six months, and the Supreme Court held that said provision clearly and unambiguously meant that the royalty interest was for a period of fifteen years and six months from the date of the royalty deed, and so long thereafter as paying production continued. The appellants in the case at bar contend that because there was no paying production on September 27, 1951, the royalty interests reverted. But the Supreme Court clearly held that such was not the case, and in the Clark case, supra, 254 S.W.2d at page 103, held:

"Two elements must concur in order to bring about a reverter, namely, 'no paying production' on December 10 and 'no paying production' for six months thereafter. We think the provision means just the same as if it read 'in case there is no paying production on said land on December 10, 1945, and no paying production thereon for six months thereafter, then this grant shall become null and void.'" Bain v. Strance, Tex.Civ.App., 256 S. W.2d 208, error ref., n. r. e.

Appellants seek to avoid the effect of the royalty deeds by contending that there was a mutual mistake of law and/or facts at the time of the execution of the royalty deeds. We overrule this contention. The trial court in his findings found that there was no mistake of law or of fact as to the meaning of the quoted provision of the royalty deeds and no ambiguity in such provision.

The only evidence of mutual mistake was the testimony of Fred Weidel, an interested party. We do not believe that such testimony forms a basis for a reversal or remand of this cause. All of Weidel's testimony as to the construction of the terms of the deeds allegedly made to him by John A. Kerr, Sr., who was dead at the time of trial was heard by the court and the fact issues were resolved against appellants.

Fred Weidel handled the sale of the royalty for himself and his brother and dealt with Mr. Kerr, who acquired no interest in the royalty himself, and no one else was present. The consideration was paid by appellees and others. The respective grantees in the deeds filed an instrument dated February 4, 1944, called "Transfer of Royalty Interest" assigning to appellees and others an interest in proportion to money contributed, which was duly recorded in Fayette County, Texas.

Mr. Weidel's testimony is uncorroborated insofar as he stated that he construed the termination provision of the deeds to mean, that it was for only ten years from September 27, 1941, and also said Mr. Kerr told

him that such was the meaning of the provision and in any event presented no more than an issue for the consideration of the court, and the court resolved the fact issue in favor of appellees.

The testimony of Fred Weidel, an interested party is the evidence of a mutual mistake and as such does not form a basis for reversal or remanding the cause. The trial court found, as the evidence conclusively shows, that appellees cannot controvert Mr. Weidel's testimony because, at the time of the alleged representations by Mr. Kerr, only the witness Weidel and Kerr were present and Mr. Kerr was dead at the time of the trial, and such testimony of an interested party is not binding on the court, and at best only raises a fact issue which the trial court decided adversely to appellants, and such decision should not be overruled in an appellate court and we have no purpose to do so.

We recognize that there are exceptions to the general rule that the uncontradicted testimony of an interested party does not more than raise a fact issue for the court or jury to decide, and in this case the trial court has resolved the issue against the appellants.

Such claimed exceptions are:

"(1) Where the testimony of a party is uncontradicted, clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.

"* * * * * *

"(3) Where the testimony of a party is uncontradicted, and is corroborated by the facts and circumstances, it is to be taken as true."

The true rule is stated in 17 Tex.Jur., p. 926, sec. 418:

"418. Testimony of Party or Interested Witness.—As a rule, if the testimony bearing upon an issue comes from an interested source, the issue

must be submitted to the jury even though it be uncontradicted and controlling and though believed to be true. It is improper for the Court to assume the truthfulness of the unsupported testimony of an interested party, or to assume as a fact a matter which is proven only by such testimony. But this rule is not of such absolute and universal application as to require a reversal in all instances of its violation; and the rule does not apply where the nature of the testimony is such that it might readily be discredited if it were not true, and where the opposite party offers no disparaging proof whatsoever."

In Springfield Fire & Marine Insurance Company v. Wm. Cameron & Co., Tex.Civ. App., 96 S.W.2d 788, 790, the Court made the following holding:

"We recognize that there is a general rule that testimony of an interested party to a suit, though not contradicted by any other witness does no more than raise an issue for the determination of the jury. Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447. But there is an apparent exception to this rule where the testimony of the interested witness is not contradicted by any other witnesses, or attendant circumstances, and the same is clear, direct, and positive, and free from contradictions, inconsistencies, and circumstances tending to cast suspicion upon it. In such cases it is held that an instructed verdict may be given on such testimony. (Citing cases.) We think this latter rule should be applied in cases like the one here under consideration where the facts establishing the truth or falsity of the matter testified to by the interested witness do not rest exclusively within the bosom of the witness but are open and visible to every one, and it is easy for the opposite party to procure testimony to the contrary in the event the evidence of the interested witness be false." McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722.

The terms of the royalty deeds were clear and unambiguous and could be properly considered by the trial court as circumstances contradicting the testimony of Fred Weidel, who had read the instruments and knew the termination provisions provided that the deeds would terminate only if there was no production on September 27, 1951, and for six months thereafter.

The witness Weidel had never talked to any of the appellees prior to March, 1952, and subsequent to the discovery of oil and gas, and did not know the construction that any of appellees placed on the deeds.

It is admitted that Mr. Kerr was a man of highest integrity and no contention of fraud is asserted.

Appellees Hofmann and Loessin testified that Mr. Kerr was the kind of a man who would have changed the deeds if they were not in accordance with the agreement of the parties; that they authorized Kerr to purchase the royalty prior to the execution of the deeds, and never authorized him to make a different purchase other than what the deeds called for. The witnesses testified that they had read the deeds long prior to the discovery of oil and gas, and construed them to mean ten years and six months.

The question of fact was presented as to whether Kerr actually made the representations that Fred Weidel said he did and the trial court resolved the fact issue in favor of appellees and concluded that he was not bound by the testimony of Weidel as a matter of law.

Weidel testified that he knew of the provisions in the deeds and such were read by him and he understood them, but made a mistake as to their legal effect; but made no effort to determine the legal construction thereof by appellees.

At best, the evidence discloses no more than a unilateral mistake of law on the part of Fred Weidel and is not grounds for a reformation after twelve years.

The court was justified in excluding the evidence offered by appellants as to their

mental condition in making the oil and gas lease to Hammon Oil & Refining Co. on October 27, 1951, and which was offered to show good intention.

The judgment of the trial court is affirmed.

Affirmed.